**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-3573
_____


PAUL FALLON,
                    Appellant

v.

MERCY CATHOLIC MEDICAL CENTER OF
SOUTHEASTERN PENNSYLVANIA,
d/b/a Mercy Fitzgerald Hospital; JOHN DOES 1-10,
Fictitious Names of Entities and/or Individuals Whose
Identities are Presently Unknown, Individually, Jointly,
Severally and/or in the Alternative


_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. Civil Action No. 2:16-cv-00834)
District Judge:  Honorable Gerald J. Pappert


_____


Argued on March 23, 2017

Before:  SMITH, <u>Chief Judge</u> JORDAN and ROTH, <u>Circuit Judges</u>

(Opinion filed: December 14, 2017)


Alan H. Schorr, Esquire                   **(Argued)**
Schorr and Associates
5 Split Rock Drive
Cherry Hill, NJ   08003

            Counsel for Appellant


Darren M. Creasy, Esquire
Andrea M. Kirshenbaum, Esquire       **(Argued)**
Post & Schell
1600 John F. Kennedy Boulevard
Four Penn Center, 13th Floor
Philadelphia, PA 19103

            Counsel for Appellee

_____

O P I N I O N
_____

**ROTH**, Circuit Judge:

Paul Fallon was terminated by his employer, Mercy Catholic Medical Center, because he refused to be inoculated against flu. He opposed the flu vaccine because he believed that this vaccine might do more harm than good. However, Mercy Catholic required its employees to receive the flu vaccine unless they qualified for a medical or religious exemption. In 2014, Fallon sought the exemption on religious grounds. Mercy Catholic ruled that he did not qualify and terminated him when he continued to refuse the vaccine. Fallon sued under Title VII of the Civil Rights Act of 1964,[1] arguing that his termination constituted religious discrimination. The District Court dismissed his case with prejudice because his beliefs, while sincere and strongly held, were not religious in nature and, therefore, not protected by Title VII.

In deciding the case, the District Court considered the full text of an essay that was partially quoted in Fallon's complaint but not submitted in full until Mercy Catholic attached it to the reply brief in support of its motion to dismiss. Fallon now appeals, arguing that his beliefs are religious in nature. He also contends that only the portions of the essay, which were quoted in the complaint, should have been considered. Finally, he asserts that the dismissal should not have been with prejudice. We agree, however, with the District Court and will affirm.

---

[1] 42 U.S.C. § 2000e *et seq.*

# I. Background[2]

Fallon began his employment with Mercy Catholic as a Psychiatric Crisis Intake Worker in September 1994. In 2012, Mercy Catholic began requiring employees to obtain a flu vaccine or submit an exemption form to obtain a medical or religious exemption. Any employee granted an exemption was required to wear a mask as an accommodation. While Fallon does not belong to any religious organization, he holds strong personal beliefs, opposing the flu vaccine. In 2012 and 2013, Fallon sought and received religious exemptions, based on personal beliefs which he explained in a lengthy essay attached to his requests for exemption. In 2014, Fallon made a similar request for an exemption, again attaching his essay which he described throughout the complaint in this action, as "explaining his sincerely held beliefs."[3] His request was denied. Mercy Catholic explained to Fallon that it had changed its standards for granting a religious exemption and that Fallon's submission no longer sufficed. Mercy Catholic requested a letter from a clergyperson to support his request for an exemption. Fallon could not provide one. Fallon was suspended and ultimately terminated on December 31, 2014, for failing to comply with the flu vaccine requirements.

On February 19, 2016, Fallon filed a complaint against Mercy Catholic for, among other things,[4] religious

---

[2] Because this case was decided on a motion to dismiss, the following facts are drawn from the complaint.

[3] App. 24-30.

[4] Fallon also alleged "wrongful termination" on the basis of religion in violation of Title VII. The discrimination that he alleges is his termination so that his "wrongful termination"

4

discrimination and failure to accommodate in violation of Title VII.  On June 1, 2016, Mercy Catholic filed a motion to dismiss, arguing that Fallon's beliefs were not religious and therefore not protected under Title VII.  Fallon opposed the motion to dismiss.  Mercy Catholic submitted a reply brief and included, as an attachment, the twenty-two page essay that Fallon had attached to his request for religious accommodation in 2014.  On July 26, the District Court held a two-hour hearing on the motion, at which Fallon argued that the District Court could not consider the full essay in relation to a motion to dismiss because the full essay was not part of the complaint.  On August 9, 2016, partly on the basis of the full essay, the District Court granted Mercy Catholic's motion to dismiss.  Because the District Court concluded that amendment would be futile, the dismissal was with prejudice.

## II. Discussion[5]

### A. Religious Discrimination

Fallon argues that his complaint properly alleges religious discrimination in violation of Title VII.  Title VII makes it an unlawful employment practice for an employer "to discharge any individual, or otherwise to discriminate

---

claim does not appear to be independent of his religious discrimination claim.  He listed several other counts as well, but they were dismissed and Fallon does not appeal their dismissal.

[5] Our review of the grant of a motion to dismiss is plenary. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2009).  The District Court had jurisdiction under 28 U.S.C. § 1331.  We have jurisdiction under 28 U.S.C. § 1291.

against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . .."[6] According to the statutory definitions, "[t]he term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."[7]

Under Title VII, in order to establish religious discrimination, the employee must have shown that (1) he held a sincere religious belief that conflicted with a job requirement, (2) he informed his employer of the conflict, and (3) he was disciplined for failing to comply with the conflicting requirement.[8] Here, Fallon held a sincere opposition to vaccination that conflicted with the requirement that he receive the flu vaccine, he informed Mercy Catholic of this conflict, and he was terminated for failing to comply with the vaccination requirement. Thus, we are left to consider only whether Fallon's opposition to vaccination is a religious belief under Title VII. If not, he has not pleaded a prima facie case.[9]

---

[6] 42 U.S.C. § 2000e-2(a)(1).

[7] 42 U.S.C. § 2000e(j).

[8] *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 224 (3d Cir. 2000).

[9] Fallon's failure to accommodate claim also depends on Fallon's views being religious. *See, e.g.*, *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 319 (3d Cir. 2008) ("To establish a prima facie case of a failure to accommodate claim, the employee must show . . . she has a

## 1. The Definition of "Religion"

As we have acknowledged, "[f]ew tasks that confront a court require more circumspection than that of determining whether a particular set of ideas constitutes a religion . . .."[10] This task is particularly difficult when we have to determine whether a nontraditional faith requires the protections of the First Amendment and/or of Title VII.

In conducting our review, we bear in mind the history of the judicial definitions of religion. In *United States v. Seeger*, while interpreting a conscientious objector statute that exempted from conscription those whose religious training and belief made them opposed to war in any form, the Supreme Court put forward a standard for determining whether a belief is religious: "[D]oes the claimed belief occupy the same place in the life of the objector as an orthodox belief in God holds in the life of one clearly qualified for exemption?"[11] With this standard, the Court differentiated between those whose views were religious in nature and those whose views were "essentially political, sociological, or philosophical . . .."[12] The Court stated then, and has continued to reiterate ever since, that no court should inquire into the validity or plausibility of the beliefs; instead, the task of a court is "to decide whether the beliefs professed by a registrant are sincerely held and whether they are, in [the

---

sincere religious belief that conflicts with a job requirement . . ..").
[10] *Africa v. Com. of Pa.*, 662 F.2d 1025, 1031 (3d Cir. 1981).
[11] 380 U.S. 163, 184 (1965).
[12] *Id.* at 165.

7

believer's] own scheme of things, religious."[13]  Applying the same test later in *Welsh v. United States*, the Court made clear that belief in God or divine beings was not necessary; nontheistic beliefs could also be religious within the meaning of the statute as long as they "occupy in the life of that individual 'a place parallel to that filled by . . . God' in traditionally religious persons."[14]

This Court has specifically considered how a belief may occupy a place parallel to that filled by God in traditionally religious persons.  In *Malnak v. Yogi*, confronted with this question, Judge Adams in a concurrence investigated definitions of religion from the time of the Framing of the Constitution.  These definitions tended to revolve around belief in God.[15]  Finding them inadequate,

---

[13] *Id.* at 185; *see also Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2779 (2014) ("[I]t is not for us to say that [the believers'] religious beliefs are mistaken or insubstantial.").

[14] 398 U.S. 333, 340 (1970) (quoting *Seeger*, 380 U.S. at 176).  Fallon, quoting 29 C.F.R. § 1605.1, argues that religious beliefs are moral or ethical beliefs as to what is right and wrong that are sincerely held with the strength of traditional religious views.  This argument is incorrect.  The next sentence of the regulation describes the regulation as adopting the standard in *Seeger* and *Welsh*.  Hence, we do not read the regulation to require only that the beliefs relate to "what is right and wrong" and be "sincerely held with the strength of traditional religious views."  They must meet the standards in *Seeger* and *Welsh*.

[15] 592 F.2d 197, 201 (3d Cir. 1979) (Adams, J., concurring).

Judge Adams proposed a modern definition of religion.[16] We later adopted this definition in *Africa v. Commonwealth of Pennsylvania*, describing it as follows:

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs.[17]

This definition has met with considerable agreement.[18]

---

[16] *Id.* at 207-10.

[17] 662 F.2d at 1032.

[18] *See Friedman v. S. Cal. Permanente Med. Grp.*, 102 Cal. App. 4th 39, 60-61 (2002) (listing cases). This definition is also in agreement with dictionary definitions. *See, e.g.*, Black's Law Dictionary 1482 (10th ed. 2014) (defining "religion" as "[a] system of faith and worship usu. involving belief in a supreme being and usu. containing a moral or ethical code; esp., such a system recognized and practiced by a particular church, sect, or denomination"); Merriam-Webster's Collegiate Dictionary (11th ed.), *available at* https://www.merriam-webster.com/dictionary/religious (defining "religious" as "relating to or manifesting faithful devotion to an acknowledged ultimate reality or deity"); *Religious*, Dictionary.com, http://www.dictionary.com/browse/religion (defining "religion" as "a set of beliefs concerning the cause, nature, and purpose of the universe, especially when considered as

## 2. Fallon's Beliefs

Under *Africa*, we must determine whether Fallon's beliefs "address[] fundamental and ultimate questions having to do with deep and imponderable matters," are "comprehensive in nature," and are accompanied by "certain formal and external signs."[19]

Fallon's beliefs are laid out in the complaint. First, he agrees with a quote, attributed to the founder of Buddhism:

> Do not believe in anything simply because you have heard it. Do not believe in anything simply because it is spoken and rumored by many. Do not believe in anything merely on the authority of your teachers and elders. Do not believe traditions because they have been handed down for many generations. But after observation and analysis, when you find that anything agrees with reason and is conducive to the good and benefit of one and all, then accept it and live up to it.[20]

He believes that "one should not harm their [sic] own body and strongly believes that the flu vaccine may do more harm

---

the creation of a superhuman agency or agencies, usually involving devotional and ritual observances, and often containing a moral code governing the conduct of human affairs") (last visited Oct. 31, 2017).

[19] *Africa*, 662 F.2d at 1032.

[20] App. 28.

than good."[21]  He concludes that if he yielded to coercion and consented to the hospital mandatory policy, he would violate his conscience as to what is right and what is wrong. Consequently, he must follow his conscience and refuse the influenza vaccine.[22]

It does not appear that these beliefs address fundamental and ultimate questions having to do with deep and imponderable matters, nor are they comprehensive in nature.  Generally, he simply worries about the health effects of the flu vaccine, disbelieves the scientifically accepted view that it is harmless to most people, and wishes to avoid this vaccine.  In particular, the basis of his refusal of the flu vaccine—his concern that the flu vaccine may do more harm than good—is a medical belief, not a religious one.  He then applies one general moral commandment (which might be paraphrased as, "Do not harm your own body") to come to the conclusion that the flu vaccine is morally wrong.  This one moral commandment is an "isolated moral teaching"; by itself, it is not a comprehensive system of beliefs about fundamental or ultimate matters.[23]  Thus, we do not believe that either of the first two factors in *Africa* is met here.

Fallon fares no better under the third factor.  Fallon's views are not manifested in formal and external signs, such as "formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation,

---

[21] *Id.*

[22] *Id.*

[23] *See Africa*, 662 F.2d at 1032.

11

observation of holidays and other similar manifestations associated with the traditional religions."[24]

For this reason, because Fallon's beliefs do not satisfy any of the *Africa* factors, Fallon's beliefs do not occupy a place in his life similar to that occupied by a more traditional faith. His objection to vaccination is therefore not religious and not protected by Title VII.

We note that we are not the only court to come to the conclusion that certain anti-vaccination beliefs are not religious.[25] This is not to say that anti-vaccination beliefs cannot be part of a broader religious faith; in some circumstances, they can, and in those circumstances, they are

---

[24] *Malnak*, 592 F.2d at 209 (Adams, J., concurring).

[25] *See Mason v. Gen. Brown Cent. Sch. Dist.*, 851 F.2d 47, 51 (2d Cir. 1988) (upholding as not clearly erroneous a district court finding that certain parents' opposition to vaccination was "based, not on religious grounds, but on scientific and secular theories"); *Hanzel v. Arter*, 625 F. Supp. 1259, 1260, 1265 (S.D. Ohio 1985) (describing a professed belief in "chiropractic ethics"—"a body of thought which teaches that injection of foreign substances into the body is of no benefit and can only be harmful"—as philosophical rather than religious); *McCartney v. Austin*, 298 N.Y.S.2d 26, 27 (N.Y. App. Div. 1969) ("[A]ppellants' opposition [to vaccination]—whether or not predicated upon their personal moral scruples or upon medical concern—is not upon religious grounds . . ..").

12

protected.[26]   However, Fallon has not presented such circumstances here.[27]

## B. The Essay

Fallon also argues that the District Court erred in considering the essay that Mercy Catholic submitted with its reply brief, supporting its motion to dismiss.  Fallon had submitted this essay to Mercy Catholic with his request for an accommodation and quoted portions of it in his complaint.  Fallon argues that the essay was outside the pleadings and therefore inappropriate to consider in relation to a motion to dismiss.

Ordinarily, a court may not consider documents outside the pleadings when deciding a motion to dismiss.  If a court wishes to consider documents outside the pleadings, it

---

[26] For example, Christian Scientists regularly qualify for exemptions from vaccination requirements.  *See, e.g.*, *Boone v. Boozman*, 217 F. Supp. 2d 938, 947 n.20 (E.D. Ark. 2002); *Kolbeck v. Kramer*, 202 A.2d 889, 891 (N.J. Super. Law. Div. 1964).

[27] Fallon makes much of the fact that Mercy Catholic requested a letter from a clergyperson, but this fact is not determinative.  A letter from a clergyperson is not the only way to demonstrate that one holds a religious belief.  To the extent that Mercy Catholic may have believed that it could not be discriminating on the basis of religion if it fired an employee who could not produce a letter from a clergyperson, it was mistaken.  However, because Fallon's beliefs are not religious, terminating him for acting on his beliefs did not constitute religious discrimination.

13

must convert a motion to dismiss into a motion for summary judgment.[28] However, a court may consider a document that is "integral to or explicitly relied upon" in the complaint.[29] For example, in *Burlington Coat Factory*, when a plaintiff alleged in a complaint that defendants failed to disclose certain facts in publicly issued reports, a court properly considered the full texts of the reports when the reports were attached to a motion to dismiss.[30]

Fallon, in his complaint, quoted portions of this essay and described the essay as "explaining his sincerely held moral and ethical convictions."[31] Thus, Fallon explicitly relied on it, and it was permissible for the District Court to consider it. Fallon suggests that, because the essay was attached to a reply brief, not the initial motion to dismiss, he was given no opportunity to respond to the letter and explain its relevance. However, the District Court held a two-hour hearing after the briefs were submitted. Anything that Fallon needed to explain regarding the letter could have been explained then. Before us, counsel complained that the District Court repeatedly cut him off at the hearing, but the transcript shows that the District Court cut him off only when he attempted to introduce extrinsic evidence not relied upon in the complaint. Thus, we discern no error in the District Court's approach to the essay or to Fallon's attempts to introduce other extrinsic evidence.

---

[28] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

[29] *Id.* (internal quotation marks and emphasis omitted).

[30] *Id.* at 1426.

[31] App. 25.

## C. Leave to Amend

Fallon also argues that dismissing with prejudice was error because he should have been granted leave to amend. We review the District Court's denial of leave to amend for futility under an abuse of discretion standard.[32] Committing a legal error constitutes an abuse of discretion, and futility is a legal question.[33] Amendment would be futile if the complaint, as amended, would nonetheless be subject to dismissal for failure to state a claim.[34]

Fallon has not proposed any amendments that would cure the fundamental deficiency in his claims—that his anti-vaccination beliefs are not religious in nature. In light of our analysis above, it does not appear that he could do so. Hence, we conclude that the District Court did not abuse its discretion in refusing to grant leave to amend.

## III. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[32] *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir. 2010).

[33] *See id.* (observing that futility is determined under the same standards as a court would apply under Federal Rule of Civil Procedure 12(b)(6)).

[34] *See id.*