NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2249
_____

ROBERT GARFIELD, individually and on behalf of all others similarly situated,
Appellant

v.

SHUTTERFLY, INC.; RYAN O'HARA; THOMAS D. HUGHES; WILL LANSING;
EVA MANOLIS; ANN MATHER; ELIZABETH RAFAEL; ELIZABETH SARTAIN;
H. TAYLOE STANSBURY; BRIAN SWETTE; MICHAEL ZEISSER;
CHRISTOPHER NORTH,
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 1-19-cv-01387)
District Judge: Honorable Leonard P. Stark
_____

Argued: February 8, 2021

Before: CHAGARES, SCIRICA, and COWEN, *Circuit Judges*

(Filed: May 21, 2021)

Blake A. Bennett
Cooch & Taylor
1007 North Orange Street
The Nemours Building, Suite 1120
P.O. Box 1680
Wilmington, DE 19899

Adam Frankel
Greenwich Legal Associates
881 Lave Avenue

Greenwich, CT 06831

Juan E. Monteverde [ARGUED]
Miles D. Schreiner
Monteverde & Associates
350 Fifth Avenue
Suite 4405
New York, NY 10118

    *Counsel for Appellant*

Lewis R. Clayton [ARGUED]
Paul A. Paterson
Justin Ward
Paul Weiss Rifkind Wharton & Garrison
1285 Avenue of the Americas
New York, NY 10019

Daniel A. Mason
Paul Weiss Rifkind Wharton & Garrison
500 Delaware Avenue
Suite 200
Wilmington, DE 19899

    *Counsel for Appellees*

————————————

OPINION[*]

————————————

SCIRICA, *Circuit Judge*

This securities class action lawsuit involves an allegedly misleading statement made

in a proxy statement issued by Shutterfly, Inc.  The Proxy was issued to gain shareholder

---

[*]    This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

support for the merger of Shutterfly with affiliates of certain funds managed by Apollo Management IX, L.P. The lead plaintiff and appellant in this matter is a former shareholder of Shutterfly, Robert Garfield. In addition to Shutterfly, the defendants include the management of Shutterfly at the time the Proxy was issued. Plaintiff appeals from the District Court's May 20, 2020 order granting Defendants' motion to dismiss with prejudice. For the reasons discussed below, we will affirm.

I[1]

In recent years, Shutterfly experienced a series of disappointing quarters. After its stock price closed at $97.00 on June 12, 2018, Shutterfly missed revenue estimates in two straight quarters and saw its stock price drop significantly. During this time, Shutterfly lowered its Adjusted EBITDA[2] target, announced its CEO, Christopher North, would depart in August 2019, formed a Strategic Review committee, retained financial advisor Morgan Stanley, and was reviewing strategic alternatives, such as a sale of the company.

Following these changes, the Strategic Review Committee reviewed financial projections for 2019–2021 in late-February 2019. The Committee approved the projections for use in the strategic review process and allowed them to be produced and distributed to interested parties and to Morgan Stanley for use in its financial analysis of the company.

---

[1] Given that this case is at the motion to dismiss stage, we take as true the well-pled facts presented in the Complaint. We also take notice of the Proxy itself because it was explicitly relied upon in the Complaint. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (noting courts may take judicial notice of documents "integral to or explicitly relied upon in the complaint").

[2] Earnings Before Interest, Taxes, Depreciation, and Amortization is a common marker used to evaluate a company's performance.

3

These projections, and related three-year and six-year "base case" projections are referred to as the "Management Case Projections." Shutterfly received four merger offers on March 28 and March 29, 2019, ranging from $45 to $52 per share.

Conditions slightly improved in the next quarter. In late-April, Shutterfly announced a positive performance in the last quarter and issued improved financial guidance for 2019.

At the same time, Shutterfly's management created, and the Board of Directors approved, an alternative set of projections, known as the "Sensitivity Case Projections." As described in the Proxy, these projections "represented a downside view that gave greater weighting to the risk and challenges facing Shutterfly as an independent company in order to facilitate scenario planning discussions with" the Shutterfly Board. J.A. 188. These projections "assumed declines in [Shutterfly's] Consumer and Lifetouch revenue . . ., reflecting more intense competition in our Consumer business than we presently anticipate, and reduced demand for our Lifetouch products due to lower participation among schools than we presently anticipate."[3] J.A. 188.

Shutterfly entered into a merger agreement with Apollo on June 10, 2019. Under the terms of the agreement, Shutterfly common stockholders would receive $51 per share. In support of the proposed merger, Shutterfly had Morgan Stanley prepare a fairness opinion. To reach its conclusion that the proposed merger was fair, Morgan Stanley

---

[3] Shutterfly organized its business into three divisions: Lifetouch (school portraits), Shutterfly Consumer, and Shutterfly Business Solutions.

4

received and reviewed the Management Case Projections, the Sensitivity Case Projections, and certain projections based on Wall Street research reports.

To persuade shareholders to approve the merger, Defendants authorized the dissemination of the Proxy on July 30, 2019. As relevant in this appeal, the Proxy included a discussion of the Morgan Stanley fairness opinion. Specifically, it included the estimated implied value per share calculated by Morgan Stanley based on both the Management Case Projections and the Sensitivity Case Projections. Each time the Proxy discussed the value per share numbers, it stated the values were prepared by Morgan Stanley and indicated the analysis Morgan Stanley applied. *See, e.g.*, J.A. 180 ("Morgan Stanley calculated the estimated implied value per share of our common stock as of June 9, 2019 as follows:" before listing the values); *see also* J.A. 181 ("The following table summarizes Morgan Stanley's analysis:"); J.A. 182 ("Morgan Stanley calculated the estimated implied value per share of our common stock as follows:"); J.A. 183 ("The following table summarizes Morgan Stanley's analysis:").

After the Proxy was released, Jack Wolf initiated the current lawsuit in the District of Delaware, contending not enough information had been disclosed. After a supplemental proxy was filed in August, Wolf voluntarily dismissed the case. A majority of shareholders approved the merger on August 28, 2019, and the merger closed on September 25, 2019. Bill Spurlock reopened the case in October 2019 and filed an amended complaint on December 23, 2019—this remains the operative complaint.

Defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), including jurisdictional arguments contending Spurlock lacked standing. In response, Spurlock was

substituted out and replaced by Robert Garfield.  The court heard oral arguments on May 20, 2020 and issued its decision granting the motion to dismiss with prejudice from the bench.  This appeal followed.

II[4]

This lawsuit is based on alleged violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a).[5] Section 14(a) of the Exchange Act prohibits soliciting a shareholder's vote "in contravention of such rules and regulations as the Commission may prescribe."  15 U.S.C. § 78n(a)(l).  Securities and Exchange Commission Rule 14a-9 implements § 14(a). *See* 17 C.F.R. § 240.14a-9.  Rule 14a-9 prohibits the solicitation of a shareholder's vote through a communication "containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9(a).  To establish that a proxy violates § 14(a), the plaintiff must prove (1) the proxy contained a false or misleading statement and the misstatement was material; (2) the misstatement caused the plaintiff's

---

[4]  The District Court had jurisdiction under 28 U.S.C. § 1331.  We have jurisdiction under 28 U.S.C. § 1291.  In analyzing a Rule 12(b)(6) motion to dismiss, we accept as true the well-pled facts of the complaint and disregard legal conclusions. *Davis v. Wells Fargo*, 824 F.3d 333, 341, 351 (3d Cir. 2016).  Additionally, we "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Engineers, Local Union No. 66*, 580 F.3d 185, 192 (3d Cir. 2009) (internal quotation marks omitted).
[5]  Liability under § 20(a) requires a finding of liability under § 14(a).  Because we hold there is no liability under § 14(a), the § 20(a) claim fails.

loss; and (3) the proxy statement itself "was an essential link in the accomplishment of the transaction." *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007).

While the Complaint included five allegedly misleading statements in the Proxy, Plaintiff confines his appeal to only the inclusion of the share valuation ranges that were based on the Sensitivity Case Projections. Therefore, the only remaining alleged misstatement is that the Proxy included Sensitivity Case valuation ranges and misled shareholders regarding the true value of the company. This lone remaining statement fails to establish a cause of action because it was not misleading, and any misleading aspect of the share valuation ranges was not material. We reach this conclusion due to the ample disclosures provided in the Proxy that the values were created by Morgan Stanley, the estimates should not be taken as the true value of the company, and—most importantly—the Sensitivity Case Projections were based on downside assumptions the company itself believed were less likely to occur.

## A. *The Proxy Accurately Represented the Share Value Ranges*

As an initial matter, Plaintiff's challenge of the share valuation ranges is foreclosed by our decision in *OFI Asset Management v. Cooper Tire & Rubber*, 834 F.3d 481 (3d Cir. 2016). In *OFI*, an attempt by one company to acquire Cooper Tire & Rubber ("Cooper") failed. *Id.* at 488. A proxy statement issued by Cooper included projections Cooper shared with potential purchasers during negotiations, as well as projections Cooper provided to its bankers to form a fairness opinion. *Id.* The proxy noted it included the projections "only because this information was provided to [the purchaser], certain other potential purchasers and [Cooper's] financial advisor" during negotiations. *Id.* The proxy warned the

7

projections were based on "assumptions that may now be outdated" and "[y]ou should not regard the inclusion of these projections . . . as an indication that Cooper [or the buyer] . . . considered or consider the projections to be necessarily predictive of actual future events, and you should not rely on the projections as such." *Id.*

The *OFI* plaintiffs contended the alternate projections in the proxy were "objectively false because they were materially greater than the projections used internally and presented to [the buyer] just weeks earlier." *Id.* at 500. Although the projections in the proxy were more favorable than the internal projections provided to the buyer at an earlier point, we concluded it did not make the proxy false. *Id.* This was because the proxy included disclaimers indicating the forecasts were only included because the information was provided to the buyer and the projections themselves were not included as statements of fact. *Id.* at 501. We concluded that the only statement of fact was that the "projections were, in fact, the projections that Cooper provided to [the buyer] and the financing bank during the negotiation of the deal." *Id.* Because there was no allegation that some different set of projections had been provided instead, there was no cause of action. *Id.*

Accordingly, we must first look to the Proxy and determine (1) what statements of fact Shutterfly made about the share value ranges at issue, and (2) whether the Complaint alleges facts plausibly demonstrating those statements of fact to be false or misleading.

Here, there is no cause of action because the only statements of fact were that the share value ranges at issue were calculated by Morgan Stanley based on the Sensitivity Case Projections and descriptions of the type of analysis used to estimate the value. Each time the share value ranges at issue were included in the Proxy, the Proxy stated that the

values were calculated by Morgan Stanley and indicated the type of analysis used to estimate the value. They were also placed alongside the share value ranges based on the Management Case Projections. Importantly, there is no allegation that Morgan Stanley provided some other estimated share value ranges for the Sensitivity Case Projections. Accordingly, the statements in the Proxy were not false or misleading about the origins of those ranges or the ranges themselves—Morgan Stanley created them.

As with the projections in *OFI*, the share value ranges here were not independent assertions of fact—they were included as descriptions of the Morgan Stanley analysis. The Proxy warned "the ranges of valuations resulting from any particular analysis described above should not be taken to be Morgan Stanley's view of the actual value of Shutterfly[,]" that "[a]ny estimates contained in Morgan Stanley's analyses are not necessarily indicative of future results or actual values, which may be significantly more or less favorable than those suggested by such estimates[,]" and their "analyses do not purport to be appraisals or to reflect the prices at which shares of our common stock might actually trade." J.A. 185. While these warnings are not identical to *OFI*, they substantively provide a similar warning to shareholders—these values are based on certain disclosed assumptions and should not be understood as independent assessments of Shutterfly's actual value.

Plaintiff seeks to distinguish *OFI* on the basis that projections are forward-looking statements while the share value ranges are statements about a present fact (the estimated value of the company), but that is not a salient distinction here. The question is: what did the Proxy say? In *OFI* it said the projections were provided to the buyer and financing

9

bank.  *OFI*, 834 F.3d at 501.  Here, the Proxy says the value ranges were provided by Morgan Stanley following certain analyses.  Neither statement was false or misleading.[6]

**B. *The Share Values Derived from the Sensitivity Case Projections Were Not Inherently Misleading***

Alternatively, Plaintiff contends that "even literally true statements may nevertheless be *misleading with respect to* a material fact" and the share values were inherently misleading regarding the fair value of the shareholders' shares.  Reply Br. at 6 (citing *In re Taylor*, 655 F.3d 274, 283 (3d Cir. 2011) (bankruptcy proceeding case); *Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 92 (2d Cir. 2010)).  Additionally, Plaintiff cites *In re Burlington Coat Factory Securities Litigation*, to establish that a projection lacks a reasonable basis and can be misleading on its own if it was "made with either (1) an inadequate consideration of the available data or (2) the use of unsound forecasting methodology."  Reply Br. at 11 (citing *In re Burlington*, 114 F.3d 1410, 1429 (3d Cir. 1997)).

Plaintiff contends the value ranges in the Proxy lack "reasonable genuine belief" and have "no basis" because the underlying Sensitivity Case Projections were "completely below the present value of Shutterfly's legitimate Management Case cash flow projections . . ." and Defendants continued to profess that the Management Case Projections reflected likely future outcomes.  Appellant Br. at 24, 26; Reply Br. at 14.  This objection appears

---

[6]   Plaintiff also attempts to distinguish *OFI* on the grounds that § 14(a) prohibits a broader range of statements than § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b).  However, *OFI* involved claims under both §§ 10(b) and 14(a), and we concluded there was no misrepresentation under § 14(a) just as there was no misrepresentation under § 10(b). *OFI*, 834 F.3d at 505.

to be grounded in the very definition of a downside projection (*i.e.*, a projection lower than the primary operating projections) and would make the inclusion of *any* risk-sensitive projections or share value ranges actionable.

In support of this argument, Plaintiff points to *Herskowitz v. Nutri/System, Inc.*, 857 F.2d 179 (3d Cir. 1988). As noted in *Herskowitz*, "[a]n opinion or projection, like any other representation, will be deemed untrue for purposes of the federal securities laws if it is issued without reasonable genuine belief or if it has no basis." *Id.* at 184. In *Herskowitz*, shareholders alleged the fairness opinion itself was misleading because it used a 46% tax rate to assess the company's value even though at the time Congress was planning to lower taxes. *Id.* at 183. The district court removed this question from the jury because the proxy included disclosures that Congress was evaluating various tax proposals. *Id*. at 184. But we noted this did not "address the separate issue of possible fraudulence in the fairness opinion itself." *Id.* Because this was a separate issue from the proxy statement, we remanded to the district court so the jury could evaluate conflicting evidence regarding the reasonableness of using the 46% tax rate in the fairness opinion. *Id.* at 185.

*Herskowitz* can be distinguished from the present case because there was expert opinion in *Herskowitz* that a tax cut was "virtually certain." *Id*. at 184. Because the tax cut was "virtually certain," a reasonable jury could find it was misleading to rely on the higher tax rate in drafting the fairness opinion. *Id.* at 184–85. Given the dynamic market environment that Shutterfly operated within and its underperformance in several recent quarters, the Management Case Projections were not "virtually certain," and Plaintiff has pointed to nothing to suggest otherwise. Accordingly, although Plaintiff disagrees with the

11

basis for the projections, Plaintiff has not plausibly pled that it was "objectively unreasonable" to use lower Lifetouch and Consumer assumptions in a downside projection. *Id.* at 185.

In his Reply, Plaintiff attempts to attack the motivations Defendants had in creating the Sensitivity Case Projections. Plaintiff questions the timing of the Sensitivity Case Projections and contends "those projections served no legitimate business purpose and were created to justify a bargaining outcome." But Plaintiff has already abandoned this argument. The Complaint alleged the Proxy was false or misleading because it stated that the Sensitivity Case Projections were prepared "in order to facilitate scenario planning discussions with [the] Board at its meeting on May 29, 2019." J.A. 110 ¶ 91. Since the District Court determined this statement was not false or misleading and Plaintiff does not challenge that determination in this appeal, Plaintiff cannot now resurrect his effort to question the motivation of the Board in creating the Sensitivity Case Projections.

Finally, Plaintiff cites a number of district court cases to contend that using lower projections based on assumptions a company's management believes are unlikely to occur is misleading. But each of these cases involved a downward revision of a company's primary projections or a statement by the company that the lower projections were just as or more accurate. *See Karri v. Oclaro, Inc.*, No. 18-cv-03435-JD, 2020 U.S. Dist. LEXIS 187317, at *3 (N.D. Cal. Oct. 8, 2020) (company revised internal projections downward); *In re Envision Healthcare Corp.*, No. 18-1068-RGA, 2019 U.S. Dist. LEXIS 128237, at *15 (D. Del. Aug. 1, 2019) (defendants stated sensitivity projections were "equally likely to come to fruition" as the management projections); *Baum v. Harman Int'l Indus., Inc.*,

12

408 F. Supp. 3d 70, 86–87 (D. Conn. 2019) (management downplayed accuracy of primary projections and created lower projections it claimed were more accurate); *In re Hot Topic, Inc. Sec. Litig.*, No. CV 13-02939 SJO (JCX), 2014 WL 7499375, at \*5 (C.D. Cal. May 2, 2014) (company stated revised projections were more accurate and allegedly failed to fully disclose the original, higher projections).

These cases all stand in contrast to the present case where the Proxy accurately included valuations and projections based on both the Management Case and Sensitivity Case Projections *and* represented that the company believed the higher projections were more likely to come true. Accordingly, we affirm the District Court's conclusion that the Plaintiff failed to plausibly plead that Defendants made a false or misleading statement.

### C. Any Alleged Misleading Share Value Ranges Based on the Sensitivity Case Projections Were Not Material

Even had we adopted Plaintiff's arguments that the inclusion of the share value ranges was misleading, their misleading nature was not material. In determining materiality, "the issue is whether there is a substantial likelihood that the disclosure would have been viewed by the reasonable investor as having 'significantly altered the 'total mix' of information' available to that investor." *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 280 n.11 (3d Cir. 1992). Dismissal under Rule 12(b)(6) is only appropriate "if the alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality . . . ." *Id.*

Disclosures and warnings in a proxy statement can render a misleading statement immaterial under the "bespeaks caution" doctrine. Accordingly, "when an offering

13

document's forecasts, opinions or projections are accompanied by meaningful cautionary statements, the forward-looking statements will not form the basis for a securities fraud claim if those statements did not affect the 'total mix' of information the document provided investors. In other words, cautionary language, if sufficient, renders the alleged omissions or misrepresentations immaterial as a matter of law." *In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 371 (3d Cir. 1993). These warnings "must be substantive and tailored to the specific future projections, estimates or opinions in the prospectus which the plaintiffs challenge." *Id.* at 371–72.

Plaintiff contends the inclusion of share value ranges was materially misleading because it "tainted" the "shareholders' 'evaluation' of the pertinent question—whether they are receiving fair value . . . ." Appellant Br. at 22. Plaintiff contends the provided disclosures do not diminish the importance of the lower valuation ranges because fairness opinions are offered to convince shareholders that the proposed deal is a fair one "based upon the company's implied present value." Reply Br. at 10; Appellant Br. at 23. To hold otherwise, Plaintiff contends, "ignores the realities of the human thought process. A reasonable shareholder presented with multiple valuation ranges that fall below the merger consideration is likely to believe their shares are worth less." Appellant Br. at 22 n.9.

We must assume "an investor reads each statement within such a document, whether of fact or of opinion, in light of all its surrounding text, including hedges, disclaimers, and apparently conflicting information." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190 (2015).

In the present case, the Proxy included specific and substantive disclosures and warnings. It warned "the ranges of valuations resulting from any particular analysis described above should not be taken to be Morgan Stanley's view of the actual value of Shutterfly[,]" that "[a]ny estimates contained in Morgan Stanley's analyses are not necessarily indicative of future results or actual values, which may be significantly more or less favorable than those suggested by such estimates[,]" and their "analyses do not purport to be appraisals or to reflect the prices at which shares of our common stock might actually trade." J.A. 185. Furthermore, when discussing the underlying Sensitivity Case Projections, the Proxy warned these projections "represented a downside view that gave greater weighting to the risk and challenges facing Shutterfly as an independent company in order to facilitate scenario planning discussions with" the Shutterfly Board. J.A. 188. They "assumed declines in our Consumer and Lifetouch revenue . . ., reflecting more intense competition in our Consumer business than we presently anticipate, and reduced demand for our Lifetouch products due to lower participation among schools than we presently anticipate." J.A. 188.

We conclude a reasonable investor could not plausibly read these statements and believe the Sensitivity Case Projections should be used to estimate the current actual value of Shutterfly when the Proxy was issued. They were warned the value ranges should not be taken as the actual value of Shutterfly. With management having disclaimed values, the shareholders were also told the Sensitivity Case Projections were a downside estimate and lower than management anticipated would actually occur. Therefore, even if those lower values were misleading as to the true value of Shutterfly, shareholders were told why those

15

values were lower and they were placed alongside the values that Plaintiff contends were accurate. Accordingly, these warnings and disclaimers "directly address the substance of the statement the plaintiffs challenge" and render the alleged misrepresentation immaterial. *See In re Donald J. Trump*, 7 F.3d at 372.

III

Alternatively, the District Court concluded that the Complaint sounded in fraud and the heightened pleading standards of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA") were not met. For the reasons discussed in this section, we conclude that the Complaint did sound in fraud and the heightened requirements of Rule 9(b) and the PSLRA, 15 U.S.C. § 78u-4(b)(1), were not met.

**A. The Complaint Sounded in Fraud**

A securities lawsuit sounds in fraud when it accuses the defendants of "'intentionally,' 'knowingly,' or 'recklessly' misrepresent[ing] . . . certain material information." *Shapiro*, 964 F.2d at 287. This is most easily identified in cases where the plaintiff does not allege negligence at all. *See, e.g.*, *id.* at 287–88 ("There is not a hint in the allegations that defendants were negligent in violating [securities laws]."). But when it is not so explicit, we must make "an assessment of the particular claim to determine whether acts of fraud on the part of the defendants form the basis for the claim against them." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006).

Plaintiff contends the Complaint does not sound in fraud because it alleges "Defendants did not genuinely believe in the Sensitivity Case Projections" and "'allegations of disbelief' of projections or opinions 'are not the same as allegations of

16

fraud.'" Appellant Br. at 15 (quoting *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 141 (2d Cir. 2013)). Plaintiff also points to *Suprema* to contend that references to negligence in the Complaint preclude us from finding the Complaint sounds in fraud. In *Suprema*, the plaintiffs brought negligence and fraud claims. Our circuit held the negligence-based claims did not sound in fraud even though the underlying activity was the same. 438 F.3d at 270–74. This was because the plaintiffs expressly disavowed fraud in their negligence claims and carefully separated the two types of claims. *Id.* at 273. Therefore, when plaintiffs separate fraud claims from negligence claims, the fraud counts do not "contaminate" the negligence counts. *Id.* at 272.

The Complaint here does allege negligence in a few instances, but the gravamen of the Complaint is that management was "aware of the truth" and proceeded to intentionally deceive shareholders. The allegations sounding in fraud are integral to Count I and not disclaimed at any point. The Complaint does not describe Shutterfly management as merely negligent individuals who included a set of share values based on projections that were unreliable. Instead, it alleges that management, motivated by financial conflicts of interest, made a decision to close a deal no matter what offer they received. J.A. 100 ¶ 62 ("A merger was a *fait accompli*."); J.A. 113, 116 ¶¶ 100, 109. It alleges that "[w]ithout the drastically reduced Sensitivity Case Projections," and the values derived from them, "Morgan Stanley could not have provided a fairness opinion" and the merger "could not have been consummated . . . ." J.A. 089, 112 ¶¶ 14, 97. It alleges that because management needed a fairness opinion to get any deal approved "they were prepared to justify the low-ball offers" by "deceiv[ing] Shutterfly stockholders with respect to the true value of their

17

shares" through the use of the Sensitivity Case Projections. J.A. 106 ¶ 76. This comes together to form "a fraudulent scheme" as the District Court described it, J.A. 068 at 66:23, because Plaintiff ultimately is alleging that Defendants knowingly and intentionally misled shareholders. Allowing Plaintiff to avoid this conclusion through the mere inclusion of the term "negligence" would create an improper loophole undermining Rule 9(b).

**B. Heightened Pleading Standards Under Rule 9(b) and Particularity Requirements Under 15 U.S.C. § 78u-4(b)(1) Apply**

Because the Complaint sounds in fraud, certain heightened pleading standards apply. The parties address three potential heightened pleading requirements: (1) heightened pleading standard under Fed. R. Civ. P. 9(b); (2) particularity requirements of 15 U.S.C. § 78u-4(b)(1); and (3) the scienter requirements of 15 U.S.C. § 78u-4(b)(2). Only the first two apply in this case.

First, while a claim under § 14(a) does not always require a heightened pleading standard, Fed. R. Civ. P. 9(b) applies to securities cases and requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Calif. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004). Second, private securities fraud cases under § 14(a) must meet the particularity requirements of the PSLRA under 15 U.S.C. § 78u-4(b)(1). *Id.*

Third, Defendants contend that 15 U.S.C. § 78u-4(b)(2) also applies when the complaint sounds in fraud. Section 78u-4(b)(2) requires the complaint to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" whenever "the plaintiff may recover money damages only on proof that the

18

defendant acted with a particular state of mind . . . ."  15 U.S.C. § 78u-4(b)(2)(A).  In support of their argument, Defendants cite to language in *Chubb Corp.*  But after quoting only § 78u-4(b)(1), *Chubb Corp.* explicitly states: "While claims brought pursuant to section 14(a) of the 1934 Act *do not require* that scienter be pleaded, any claims brought under the 1934 Act must meet the PSLRA particularity requirements *quoted above* if a plaintiff elects to ground such claims in fraud."  *Chubb Corp.*, 394 F.3d at 144 (emphasis added).  Accordingly, under *Chubb Corp.*, the scienter requirement of § 78u-4(b)(2) does not apply here as the present case is a § 14(a) action.

## C. *The Heightened Pleading and Particularity Requirements Were Not Met*

"Rule 9(b) requires a plaintiff to plead (1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his [or her] damage."  *Suprema*, 438 F.3d at 270.  This requires plaintiffs to specify "the who, what, when, where, and how: the first paragraph of any newspaper story."  *Chubb Corp.*, 394 F.3d at 144.  This does not mean a plaintiff must specify "every material detail of the fraud such as date, location, and time, [but] plaintiffs must use alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  *Id.*

The PSLRA requires Plaintiff to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).

19

"'Catch-all' or 'blanket' assertions that do not comply with the particularity requirements are disregarded." *Chubb Corp.*, 394 F.3d at 145.

Plaintiff contends he has satisfied these requirements. Plaintiff states that he identified the following: "on July 30, 2019, each Defendant approved the dissemination of a proxy statement containing unreasonably low valuations purporting to reflect the implied present value per share of Shutterfly common stock, which were predicated on projections that were far lower than what Defendants actually anticipated would happen." Reply Br. at 16–17. Additionally, Plaintiff seeks to distinguish this from other fraud-related cases because the Complaint does not rely on a "strong inference" that Defendants did not believe in the Sensitivity Case Projections—instead they point to Defendants own statement in the Proxy that they did not "anticipate" those numbers materializing. Reply Br. at 17.

Despite the inclusion of this information, Plaintiff has failed to show "knowledge by the person who made [the false statement] of its falsity" and "ignorance of its falsity by the person to whom it was made." *See Suprema*, 438 F.3d at 270.

On the first point, the Complaint alleges the share value ranges were misleading and Defendants knew they were misleading because, for example, they "knew that the Sensitivity Case Projections were not actually prepared on a reasonable basis, did not reflect the best estimates and judgments of Shutterfly's management, and did not reflect Shutterfly's expected future financial performance as of the date they were prepared." J.A. 118 ¶ 119; *see also* J.A. 118 ¶ 120 ("[H]e was aware of the truth regarding the Company's financial results and expected future financial performance, was aware of the contents of the Management Case Projections and Sensitivity Case Projections, and reviewed the

financial analyses and fairness opinion with Morgan Stanley."). But Plaintiff has abandoned his claim that the Proxy was false or misleading when stating the Sensitivity Case Projections were "prepared on a reasonable basis, reflected the best estimates and judgments available to our management at the time and presented, to the best of our management's knowledge and belief, the expected course of action and our expected future financial performance as of the date such information was prepared." J.A. 186; Appellant Br. at 5 n.4. If it was not false or misleading to have that language in the Proxy, then Defendants could not have knowledge that the Sensitivity Case Projections were misleading.

Alternatively, on the second point, the Proxy fully discloses the nature of the Sensitivity Case Projections. Plaintiff alleges the share value ranges are misleading because the Sensitivity Case Projections are lower than what Defendants "anticipated." But this was fully disclosed in the Proxy. J.A. 188 ("The sensitivity case forecast assumed declines in our Consumer and Lifetouch revenue beginning in 2021, reflecting more intense competition in our Consumer business than we presently anticipate, and reduced demand for our Lifetouch products due to lower participation among schools than we presently anticipate."). A reasonable shareholder could not be ignorant of the fact that the share value ranges based on the Sensitivity Case Projections were materially lower than what Defendants anticipated or that the Sensitivity Case Projections were not "anticipated" by the Defendants. To the degree the values were false, a reasonable shareholder would not have been unaware of their falsity given these disclosures.

21

Accordingly, even if the statements were misleading and material, Plaintiff failed to meet the pleading requirements required of fraud claims.[7]

## IV[8]

Plaintiff contends he should be permitted to amend his complaint because he did not have a "detailed roadmap for curing the deficiencies" in his claims and because this is a "technical and demanding corner of the law." Appellant Br. at 28 (quoting *Chubb Corp.*, 394 F.3d at 166; *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)). Defendants counter with multiple arguments. First, amendment would be futile because the alleged misstatements were immaterial and not misleading and no additional facts could change that result. Second, Plaintiff conceded the basic facts of the case were not in dispute, so there are no additional facts that could be added to a revised complaint. Third, allowing leave to amend would frustrate the policy goals of the Private Securities Litigation Reform Act to "act as a 'filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis.'" Appellee Br. at 52–53 (quoting *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 246 (3d Cir. 2004)). And fourth, Plaintiff had sufficient notice and even took action to moot one of Defendants' jurisdiction-based

---

[7] Defendants offer two additional grounds for dismissal: failure to plead loss causation and the PSLRA's safe harbor provision. The District Court did not reach those arguments, so we do not address them in this opinion.

[8] We "review the District Court's denial of leave to amend for abuse of discretion[] and review *de novo* its determination that amendment would be futile." *U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014). "Amendment would be futile if the complaint, as amended, would nonetheless be subject to dismissal for failure to state a claim." *Fallon v. Mercy Catholic Med. Ctr. of Se. Pa.*, 877 F.3d 487, 494 (3d Cir. 2017).

22

arguments by substituting out the lead plaintiff after the motion to dismiss was filed. Plaintiff did not address these arguments in his Reply Brief and has not indicated what an amended complaint would contain.

Each of Defendants' reasons provides a basis for affirming the court's denial of leave to amend—especially on an abuse of discretion standard of review. Plaintiff has identified no new facts or arguments that would allow the Complaint to escape dismissal on 12(b)(6) grounds. Accordingly, amendment would be futile, and the court did not abuse its discretion in dismissing with prejudice.

V

For the foregoing reasons, we will affirm the court's dismissing the case with prejudice.