**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1992
_____

JILL GATTO,
                                   Appellant

v.

JOHNSON & JOHNSON SERVICES, INC.
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:23-cv-01607)
U.S. District Judge:  Honorable William S. Stickman, IV
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 10, 2025
_____

Before: SHWARTZ, RESTREPO, and CHUNG, <u>Circuit Judges</u>.

(Filed:  March 14, 2025)
_____

OPINION[*]
_____

_____

    [*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SHWARTZ, Circuit Judge

Jill Gatto appeals the District Court's order dismissing her amended complaint alleging that her employer, Johnson & Johnson Services, Inc., failed to reasonably accommodate her religious beliefs by declining to exempt her from the company's COVID-19 nasal swab testing requirement. Because the District Court correctly held that Gatto failed to allege a religious belief in conflict with the testing requirement, we will affirm.

I[1]

Gatto worked for Johnson & Johnson. In August 2021, Gatto sought a religious exemption from the company's COVID-19 vaccine requirement because that vaccine conflicted with her Christian faith.[2] In her request, Gatto stated that she had learned about the "negative effects of immunizations" and experienced reactions to them. App. 16. Based on these reactions, she and her family avoid vaccines as part of their "religious duty to keep holy [their] bodies" as "temple[s] of the Holy Spirit."[3] App. 16. The company granted her request and exempted her from the vaccine requirement but required her to wear a mask and "submit to daily nasal testing." Dist. Ct. Dkt., ECF No. 11 ¶ 8.

---

[1] We accept as true the facts set forth in the amended complaint. See Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.), 768 F.3d 284, 290 (3d Cir. 2014).

[2] Whether a religious belief is sincere is a question of fact, so we assume that Gatto's religious beliefs are sincere at the motion-to-dismiss stage. United States v. Seeger, 380 U.S. 163, 185 (1965).

[3] For example, instead of getting the tuberculosis vaccine, she undergoes annual blood draws to test for tuberculosis.

2

Gatto sought an exemption from nasal testing. Her request incorporated her religious objections to the vaccine and asserted that the nasal testing requirement conflicts with her Christian faith because it would "require the insertion of foreign matter into her body" to "collect[] [her] bodily fluids and report[] results." App. 18. Gatto also asserted that the vaccine and testing requirements constitute "unjust tyranny" designed to persecute the unvaccinated.[4] App. 18. According to Gatto, the Bible predicted such persecution of G-d's followers, and Gatto refused to "participate in such a Biblically evil agenda." App. 18. Finally, Gatto claimed that, by forcing her to undergo testing, Johnson & Johnson treated her differently from vaccinated employees and that this "differing treatment amounts to persecution for [her] beliefs." App. 18.

Gatto sued Johnson & Johnson, claiming that its failure to exempt her from the nasal testing requirement violated Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e(j) and 2000e-2(a)(1) ("Title VII") and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. §§ 951-63 ("PHRA").[5] Specifically, Gatto alleged that Johnson & Johnson did not meaningfully consider her requested nasal testing exemption, and terminated her contrary to the company's policy of accommodating religious objections to nasal testing. Johnson & Johnson filed a motion to dismiss the complaint, which the District Court granted. It held that the complaint failed to plausibly allege that the testing requirement conflicted

---

[4] She compares this persecution of the unvaccinated to "End Times persecution" and "persecutory conditioning for Mark of the Beast" in the Book of Revelation. App. 18.

[5] Although Gatto's amended complaint discusses her opposition to both the vaccine and nasal testing, she challenges only Johnson & Johnson's failure to grant her requested exemption from nasal testing.

3

with a religious principle, as required to state a claim under Title VII and the PHRA and concluded that any effort to further amend the complaint would be futile. Gatto v. Johnson & Johnson Servs., Inc., No. 2:23-CV-1607, 2024 WL 1857229, at *6 (W.D. Pa. Apr. 29, 2024).

Gatto appeals.

II[6]

In religious objection cases,[7] courts must examine whether a belief is a religious one as opposed to a personal belief cloaked in religion. See Wisconsin v. Yoder, 406 U.S. 205, 215-16 (1972) (holding that a claim based on the "subjective evaluation and rejection of the contemporary secular values accepted by the majority . . . would not rest on a religious basis"); Africa v. Pennsylvania, 662 F.2d 1025, 1031, 1035 (3d Cir. 1981) (concluding that plaintiffs cannot use religion to claim a "blanket privilege" or "cloak[]" a secular belief "with religious significance"); see also United States v. Seeger, 380 U.S.

---

[6] The District Court had jurisdiction pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331, 1343, and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of an order granting a motion to dismiss for failure to state a claim. Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220 (3d Cir. 2011). We must determine whether the complaint, construed in the "light most favorable to the plaintiff," Santomenno, 768 F.3d at 290 (citation omitted), "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)), "but we disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements," James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012). We may consider "documents which are attached to or submitted with the complaint," Santomenno, 768 F.3d at 290 (citation omitted), and thus, consider the letters and declaration Gatto attached to her amended complaint.
[7] We analyze Gatto's Title VII and PHRA claims together. Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 539 n.5 (3d Cir. 2006).

4

163, 165 (1965) (concluding that "essentially political, sociological, or philosophical views" are not religious); Fallon v. Mercy Cath. Med. Ctr. of Se. Pa., 877 F.3d 487, 491 n.14 (3d Cir. 2017) (describing Title VII regulations as "adopting the standard in Seeger"). Therefore, we must decide whether Gatto's objections to nasal testing are best classified as either personal, secular, or medical as opposed to religious.

Gatto's objections to testing rest on her views that (1) her body is a temple of the Holy Spirit which would be violated by the nasal swab tests; and (2) widespread mandates amount to religious persecution that the Bible predicted. Applying our case law, we conclude that her objections are not religious in nature.

In Fallon, we examined a Title VII religious discrimination claim where a medical center terminated an employee for refusing the flu vaccine because he believed it "may do more harm than good." 877 F.3d at 488, 492. We concluded that the employee's beliefs that the vaccine would violate the sanctity of his own body were based on a medical belief, rather than a religious one, notwithstanding his allegation that his beliefs were espoused by "the founder of Buddhism." Id. at 492.[8] We also declined to recognize as religious the plaintiff's belief that, if he "yielded to coercion and consented to the . . . mandatory policy, he would violate his conscience as to what is right and what is wrong." Id.

---

[8] Accord Mason v. Gen. Brown Cent. Sch. Dist., 851 F.2d 47, 48-52 (2d Cir. 1988) (rejecting parental objections to school vaccine mandates based on the purportedly religious belief that the body can heal itself and that vaccines defile one's body because such beliefs were personal rather than religious).

Like the plaintiff's objection in <u>Fallon</u>, Gatto's first objection, that the insertion of foreign matter into her body to collect her bodily fluids and report the test results violates her faith, rests largely on her view that inserting substances into her body has negative impacts. Her objection is based on her personal and medical preference, not religion. <u>See</u> <u>id.</u> (concluding the belief that the flu vaccine would "do more harm than good" was a medical, not religious, belief); <u>Africa</u>, 662 F.2d at 1033-34 (holding that the belief that raw food is "healthy" constitutes a personal belief rather than a religious one).[9]

This leaves Gatto's objection that the "mandates" impose a "tyrannical pressure of compliance" amounting to persecution of the unvaccinated. App. 18. This objection rests on her (1) opposition to "media and governmental cries" to restrict the unvaccinated from participating in commerce and using technology to "track" vaccination status, and (2) concern that these mandates amount to persecution as the Bible predicted. App. 18. Opposition to government policies or company mandates, however, is not a religious belief. <u>See</u> <u>Africa</u>, 662 F.25 at 1034 (noting that passionate adherence to "certain political, economic, or social doctrines" does not amount to a religious belief); <u>cf.</u> <u>Fallon</u>, 877 F.3d at 492 (holding that an objection to a vaccine mandate was not religious where the plaintiff claimed that if he "yielded to coercion and consented to the . . . mandatory policy, he would violate his conscience as to what is right and what is wrong").

---

[9] Gatto's assertion that she opposes testing because it treats her differently from vaccinated employees does not provide a basis for relief because: (1) the asserted "differing treatment" is a result of her own requested exemption from the vaccine requirement, App. 18, and (2) she has not alleged that others who were exempt from the vaccine requirement were not required to participate in testing as an accommodation to the objections to the vaccine requirement.

Furthermore, her allegation that this requirement amounts to "persecutory conditioning for the Mark of the Beast . . . in the Book of Revelation," App. 18, rests on her concerns about what one's vaccination status conveys and is unconnected to nasal testing.[10]

Moreover, to conclude that Gatto states a claim by invoking broad religious objections to nasal testing and related "mandates," App. 18, would impermissibly "cloak[] with religious significance" her fundamentally secular objections to testing, and thereby create a "blanket privilege" whenever an employee invokes scripture, see Africa, 662 F.2d at 1031, 1035. To allow this would be contrary to "ordered liberty,"[11] "the very concept of [which] precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests."[12] Yoder, 406 U.S. at 215-16. Permitting claims based on such generalized objections would leave "almost no limit to the accommodations that an employer would have to entertain under Title VII's ban on religious discrimination." Passarella v. Aspirus, Inc., 108 F.4th 1005, 1014 (7th Cir. 2024) (Rovner, J., dissenting).

_____

[10] E.g., App. 18 (referring to restrictions on the "unvaccinated" in participating in commerce, and the tracking of vaccination status through "tattoos" and "microchips").

[11] "Ordered liberty" is the principle that rights may be restricted in certain circumstances so long as those restrictions are not "arbitrary impositions and purposeless restraints." Washington v. Glucksberg, 521 U.S. 702, 765 (1997) (Souter, J., concurring) (internal quotation marks and citation omitted).

[12] Gatto's pleadings suggest she is seeking to "make [her] own standards." Yoder, 406 U.S. at 216. For example, Gatto asserts that her faith prevents her from the injection of foreign substances into her body for purposes of "collecti[ng] [her] bodily fluids and reporting results," App. 18, yet she subjects herself to annual tuberculosis "blood draws," App. 15. These contradictory allegations give rise to the inference that her objection to nasal testing does not come from an overarching religious principle, or a "comprehensive" belief-system, but rather, a personal view based on an "isolated teaching" that she invokes in objecting to COVID testing. See Africa, 662 F.2d at 1032.

For these reasons, Gatto's allegations give rise to, at most, the "mere possibility" that her religious beliefs informed her objections to testing, <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009), and, as a result, do not provide a basis from which we can plausibly infer that her objection to nasal testing is based on her religious beliefs rather than personal, secular, or medical ones. <u>See</u> <u>Yoder</u>, 406 U.S. at 216 (observing that a "subjective evaluation and rejection of the contemporary secular values accepted by the majority" are claims that "would not rest on a religious basis"). Accordingly, the District Court correctly dismissed her complaint for failing to state a claim for relief.

III

For the foregoing reasons, we will affirm.