Duquesne Light Company, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued October 3, 1983, before President Judge CRUMLISH, JR. and Judges BARRY and BARBIERI, sitting as a panel of three.

*Gene C. Bertsch*, for petitioner.

*John W. McTiernan, McArdle, Caroselli, Spagnolli & Beachler*, for respondent, John Jakubowski.

*Charles Hasson*, Chief Counsel, for respondent, Unemployment Compensation Board of Review.

OPINION BY JUDGE BARRY, April 25, 1984:

Petitioner Duquesne Light Company (Duquesne) seeks review of an order by the Unemployment Compensation Board of Review (Board) which affirmed a decision of the referee awarding unemployment compensation benefits to the claimant John Jakubowski.

Duquesne hired claimant in January of 1974 as a Nuclear Operator. Claimant later qualified and received certification on a different job known as a Nuclear Control Operator (NCO). He continued in this

capacity until his suspension and subsequent discharge in November of 1981.

Prior to June, 1981, claimant became increasingly dissatisfied with his position as an NCO and decided he wanted to transfer or bid into a different job within Duquesne. About two years prior to this time, Duquesne, in order to protect its substantial investment in its training of Nuclear Operators, adopted a policy forbidding NCOs to transfer or bid from that job. Claimant's union never accepted this policy.

NCOs are required to be certified biannually by the United States Department of Energy as specified by the Nuclear Regulatory Commission (NRC). To obtain an NCO's license one must disclose his or her medical history as specified by NRC. The method adopted by the Department of Energy for the disclosure of medical history by applicants for NCO certification is the completion of a Certificate of Medical History. Claimant had complied with this requirement on three prior occasions during his term of employment. During the early part of the summer of 1981, Duquesne gave claimant this form to complete because his certification expired in September, 1981. The Certificate of Medical History included a notice attached to it pursuant to the Federal Privacy Act (Privacy Act), 5 U.S.C. §552(a), which provides: "Disclosure is voluntary. If the requested information is not provided, however, the application for a facility operator's or senior operator's license may be denied."

In alleged reliance on the Privacy Act, claimant refused to complete this form in order to disqualify himself as an NCO and, in turn, secure his transfer to a different job. On July 29, 1981, Duquesne requested the Department of Energy to recertify claimant as an NCO. During August, 1981, Duquesne refused to allow an attempted bid on a different job by claimant.

Duquesne did so in accordance with the previously described policy of not permitting NCOs to bid from their job.

On Friday, October 23, 1981, a plant superintendent informed claimant that he had until the following Monday to complete and return the form or face termination. It was at this point that claimant first became aware that he might be discharged.

On October 26, 1981, claimant requested an extension on the deadline for completing the form, but Duquesne refused the request. Claimant still refused to complete the form.

On October 28, 1981, the Department of Energy denied claimant's recertification because he refused to disclose his medical history. Duquesne suspended claimant on November 1, 1981, for purposeful disqualification of himself as an NCO. Subsequently, Duquesne discharged him.

Following an award of benefits by the referee which was affirmed by the Board, Duquesne sought review. Our scope of review is limited as to whether findings of fact are consistent with each other and with the conclusions of law and can be sustained without a capricious disregard of competent evidence. In our view, sufficient evidence exists to support the findings and, therefore, claimant's action did not constitute willful misconduct.

Under Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, P.L. (1937) 2897, *as amended,* 43 P.S. §802(e): "[a]n employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct. . . ." While the statute does not provide a definition of "willful misconduct", we have, on many occasions, established what constitutes willful misconduct. Willful misconduct occurs when an

employee's behavior constitutes a wanton and willful disregard of the employer's interests, the deliberate violation of the employer's rules or the disregard of standards of behavior which an employer can rightfully expect from his employee, or negligence which manifests culpability, wrongful intent, evil design or intentional and substantial disregard for the employer's interests or the employee's duties and obligations. *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 90, 309 A.2d 165 (1973).

Duquesne contends that analogous cases exist in which an employee failed or refused to comply with certain employment standards and was found guilty of willful misconduct. In *Chacko v. Unemployment Compensation Board of Review,* 49 Pa. Commonwealth Ct. 148, 410 A.2d 418 (1980), a nurse failed to comply with state licensing standards when she did not attempt to take and pass a licensing exam. Her refusal to take the exam constituted a breach of duty and obligation inimical to the employer's interest. In *Strokes v. Unemployment Compensation Board of Review,* 29 Pa. Commonwealth Ct. 584, 372 A.2d 485 (1977), a truck driver had his motor vehicle license suspended for failure to pay a judgment. The employer ordered the employee to have the suspension lifted. The employee failed to do so and told the employer he wanted another job. The employer indicated that no other positions were available than driving positions. The employer terminated the employee's position because he could not drive. In both *Chacko* and *Strokes,* the Court denied the claimant benefits because the claimant had been dismissed for willful misconduct. Thus, Duquesne contends that claimant's refusal to disclose certain medical information similarly constituted a wanton and willful disregard of the employer's interests. We do not agree.

The Pennsylvania Supreme Court in *Frumento v. Unemployment Compensation Board of Review*, 466 Pa. 81, 351 A.2d 631 (1976), found that if an employee's action is justifiable or reasonable under the circumstances then it will not constitute willful misconduct because the employee would not be in willful disregard of the employer's intents and rules or standard of conduct that the employer has the right to expect. Thus, we must examine the employee's reasons for withholding medical information necessary for certification as an NCO balanced against the reasonableness of the request made by Duquesne to provide this information.

We believe that claimant's actions did not constitute a wanton or willful disregard of Duquesne's interests. Claimant became dissatisfied with his job and began to bid on other jobs at Duquesne. Duquesne, however, would not permit him to transfer from his position. Claimant preferred to be transferred to a more desirable job and to do so he had to be disqualified from his present position. The cases cited by the petitioner can be distinguished since claimant disqualified himself only from the position of Nuclear Control Operator and not from all the positions at Duquesne. Duquesne decided to terminate claimant rather than to allow him to work in a different position. In *Chacko* and *Strokes* no question existed as to the claimant's eligibility or willingness to transfer to another job with the same employer. Here, the claimant was both eligible and willing. We conclude, therefore, that claimant's disregard for the employer's interests was neither arbitrary nor flagrant.

The petitioner also contends that claimant is ineligible for unemployment compensation benefits because he did not become unemployed through "no fault of his own" and that Section 3 of the Law provides that unemployment reserves should be used for

"the benefit of persons unemployed through no fault of their own." Duquesne then argues since claimant lost the license required to be an NCO through his own fault that he should be ineligible for benefits even if he has not been dismissed for willful misconduct. Petitioner cites a number of cases in which an employee refused to comply with an employer's request which led to his discharge and unemployment due to fault of his own. *Varmecky v. Unemployment Compensation Board of Review*, 60 Pa. Commonwealth Ct. 640, 432 A.2d 635 (1981); *Bechtel v. Unemployment Compensation Board of Review*, 46 Pa. Commonwealth Ct. 458, 405 A.2d 1074 (1979); *Huff v. Unemployment Compensation Board of Review*, 40 Pa. Commonwealth Ct. 11, 396 A.2d 94 (1979). These cases, however, can be distinguished because none of the claimants, in these cases, asserted a right protected by law. The claimant here had a legally protected right under the Privacy Act. This notice, attached to the license application, made the disclosure of medical information voluntary. Since claimant had a legally protected right, one that he could exercise at his own option, his conduct can be characterized as reasonable. His unemployment, therefore, was not the result of his willful misconduct because claimant acted in a reasonable manner.

We conclude, therefore, that claimant established good cause for his refusal to submit the necessary licence information. The failure to disclose this information did not constitute willful misconduct. Thus, we affirm the Board's decision to award claimant unemployment compensation benefits.

ORDER

AND Now, April 25, 1984, the Order of the Unemployment Compensation Board of Review of May 10, 1982, at No. B-205467 is affirmed.

DISSENTING OPINION BY JUDGE BARBIERI:

Regretfully, I must dissent.

In both *Chacko v. Unemployment Compensation Board of Review,* 49 Pa. Commonwealth Ct. 48, 410 A.2d 418 (1980) and *Strokes v. Unemployment Compensation Board of Review,* 29 Pa. Commonwealth Ct. 584, 372 A.2d 485 (1977), *aff'd* 487 Pa. 448, 404 A.2d 854 (1980) we specifically found the conduct at issue here to be disqualifying willful misconduct, and these cases, in my view, are controlling here. While the majority would distinguish this case on the basis that the claimant here wished to transfer to another job, I know of no authority, nor do I believe, that a claimant's simple desire, without a corresponding legal or contractual right, to transfer into a new job, authorizes him or her to engage in willful conduct which requires his or her dismissal from the position he or she no longer likes. Such a desire, in my view, is simply the motive behind, and not an excuse for, the disqualifying willful misconduct.

I similarly do not believe that the federal Privacy Act statement found on the Nuclear Control Operator certification application form is of any relevance here, since that statement merely states the obvious fact that an applicant does not have to disclose his or her medical history if he or she does not wish to comply with the necessary requirements for the issuance of a certificate. Similar "privacy rights," of course, are applicable to individuals who do not wish to meet the minimum requirements for the issuance of a driver's license or a nursing certificate. The failure to comply with these necessary requirements, absent a reasonable excuse, however, still constitutes disqualifying willful misconduct, *Chacko; Strokes.* I would therefore reverse.