IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Niaja Brown,                          :
                    Petitioner        :
                                      :
        v.                            :  No. 1306 C.D. 2018
                                      :  Submitted:  February 22, 2019
Unemployment Compensation             :
Board of Review,                      :
                    Respondent        :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge[1]
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ELLEN CEISLER, Judge[2]

OPINION
BY JUDGE CEISLER                                    FILED:  May 5, 2022

        Niaja Brown (Claimant) petitions for review, *pro se*, of the August 16, 2018

Order of the Unemployment Compensation Board of Review (Board) affirming the

decision of a Referee to deny Claimant unemployment compensation (UC) benefits.

The Board concluded that Claimant is ineligible for UC benefits under Section

402(e) of the Unemployment Compensation Law (Law)[3] because she was discharged

from work for willful misconduct.  We affirm the Board's Order.

## Background

        Claimant began working for The Children's Hospital of Philadelphia

(Employer) on April 29, 2002.  Bd.'s Finding of Fact (F.F.) No. 1.  At the time of

---

[1] This matter was assigned to the panel before January 3, 2022, when President Judge
Emerita Leavitt became a senior judge on the Court.

[2] This matter was reassigned to the author on January 10, 2022.

[3] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §
802(e).  Section 402(e) of the Law provides that an employee shall be ineligible for UC for any
week in which her unemployment is due to her discharge from work for willful misconduct.  43
P.S. § 802(e).

her discharge, she was a part-time Senior Nursing Assistant for Employer. Record (R.) Item No. 2.

In 2012, Employer implemented a policy requiring all employees to receive an annual influenza vaccination (flu vaccine) unless they had a medical or religious exemption. Bd.'s F.F. No. 2. Claimant complied with Employer's policy and received the flu vaccine through 2016. *Id.* No. 3.[4] On November 7, 2017, Claimant notified Employer that she did not want the flu vaccine, but she did not provide a medical or religious exemption. *Id.* No. 4.[5]

On November 8, 2017, Employer notified Claimant that if she did not receive the flu vaccine by November 15, 2017, she would be suspended for two weeks and then discharged. *Id.* No. 5; *see* R. Item No. 3 (wherein Employer notified Claimant: "A condition of continued employment is to get the flu shot. Following the

---

[4] On her Internet Initial Claims form, Claimant stated that she initially complied with Employer's vaccine policy because she "felt coerce[d] into doing so because [she] could not afford not to be working." R. Item No. 2 (capitalization removed). She also stated:

> As a responsible adult who has never called out during a []sick season[] I could not understand why I was being force[d] to get something that went against my beliefs when I had already proven that my body has a great defense against the sickness for the [first] 10 years that I was working there.

*Id.* (capitalization removed).

[5] In her November 7, 2017 email to Employer, Claimant stated:

> I am emailing to say that I would not like to get the flu shot. I have been here . . . for the last 15[]years and [for] 10 of those years I did not receive the [flu] shot and I have never been sick. . . . I take my health very seriously and I can[]not compromise my health and get the [f]lu shot when I know for the [first] 10 years I did not receive it [and] came to work every scheduled day without calling out due to sickness. I do not understand why I am being forced to get a shot.

R. Item No. 3.

2

November 15th deadline[,] any employee not in compliance will be placed on an unpaid leave and failure to get the vaccine at the end of this period will result in termination.").

Claimant did not receive the flu vaccine by November 15, 2017, so Employer suspended her for two weeks. Bd.'s F.F. No. 6. Employer gave Claimant until December 5, 2017, to either receive the flu vaccine or provide a medical or religious exemption with supporting documentation. *Id.*; *see* R. Item No. 3.

Thereafter, Claimant submitted to Employer a one-page document titled "Advance Vaccine Directive" (AVD), which she had printed from the Natural Solutions Foundation website, proclaiming that she did not give her consent to be vaccinated. Bd.'s F.F. No. 7; *see* R. Item No. 6.[6] Because the AVD was neither a medical nor a religious exemption, on December 6, 2017, Employer discharged Claimant for refusing to receive the mandatory flu vaccine. Bd.'s F.F. No. 8.

Claimant filed a claim for UC benefits, which the local UC Service Center denied. The Service Center determined that by refusing the Employer-mandated flu

---

[6] The AVD referenced the Nuremberg Trials, the Geneva Convention, "International Law Treaties," Article 6 of the UNESCO Universal Bioethics Declaration, and *Missouri v. McNeely*, 569 U.S. 141 (2013). R. Item No. 6. The AVD stated in pertinent part:

> **Advanced Health Care Directives** are honored under U[nited ]S[tates] and International Law. Your AVD Card gives you a legal "Advance Health Care Directive" or "Living Will" informing all health care providers that YOU DO NOT CONSENT TO VACCINATION and that you are exercising your legally protected Right to Informed Consent. It warns them that if you are vaccinated against your consent they will be committing an assault, battery, malpractice and other crimes. International Law is clear: you have the Right of Informed Consent. But you MUST definitively assert it to use it. The AVD [C]ard provide[s] that definitive assertion for you even if you cannot speak.

*Id.* (bold and capitalization in original). Although the AVD references an "AVD Card," there is no such card in the record.

3

vaccine without good reason, Claimant committed an act of insubordination. R. Item No. 5. Thus, the Service Center concluded that Claimant was ineligible for UC benefits under Section 402(e) of the Law. *Id.*

Claimant appealed to the Referee, who held an evidentiary hearing on April 11, 2018. Claimant appeared *pro se* and testified on her own behalf. Employer did not appear at the hearing.[7]

Claimant testified that she worked as a Senior Nursing Assistant for Employer until the date of her discharge. Notes of Testimony (N.T.), 4/11/18, at 2. Claimant testified that, in 2017, she "used her right of informed consent to say that [she does] not want the flu shot" and submitted the AVD to Employer, but Employer did not accept it. *Id.* at 3. According to Claimant:

> I submitted [the AVD], and [Employer] said it did not fit the protocol because the protocol was . . . you had to have either a medical exemption or a religious exemption. And . . . the [AVD] didn't fit any of those, because that's a new thing that they . . . haven't even approached yet.

*Id.* Claimant testified that she believed that because Employer allowed vaccine exemptions for medical or religious reasons, it should have accepted her AVD. *Id.* at 4.

Claimant further testified that when Employer first implemented the vaccine policy in 2012, she completed a questionnaire about the policy. Claimant testified:

> I said on the questionnaire that I am against getting [the flu vaccine]. But yet I felt compelled and forced to get it because it was [for] the safety of my job. But upon coming into this knowledge [about the

---

[7] *See Hubbard v. Unemployment Comp. Bd. of Rev.*, 252 A.3d 1181, 1188 (Pa. Cmwlth. 2021) ("It is well[]settled that even where an employer fails to appear at the [referee's] hearing, [UC] benefits still 'may be denied if the employee seeking benefits proves the employer's case.'") (citation omitted).

4

AVD], and saying that I have a right to object to it, that's when I decided to say no, enough is enough.

*Id.* at 5.

Following the hearing, the Referee determined that Employer's flu vaccine policy was reasonable because "[t]he patients at [Employer's hospital] often have immune systems that are at risk." Ref.'s Order, 4/16/18, at 2. The Referee also determined that because Claimant had a common law right to refuse the flu vaccine, her refusal alone was not willful misconduct. *Id.* at 3. However, the Referee concluded that, under the circumstances of this case, Claimant's refusal to get the vaccine was "a refusal to meet a reasonable condition of future employment." *Id.* The Referee explained that "Claimant [was] well aware of what it means to work in a hospital," yet "[s]he affirmatively refused to work under those reasonable circumstances." *Id.* Therefore, the Referee concluded that Claimant was ineligible for UC benefits under Section 402(e) of the Law. *Id.*

Claimant appealed to the Board, which affirmed the Referee's decision. The Board first addressed Claimant's contention on appeal that the Referee denied her request to subpoena her health records in advance of the hearing. The Board found that Claimant failed to raise this issue before the Referee at the hearing, so the issue was waived. Bd.'s Order, 8/16/18, at 2.[8]

Next, the Board found that, given the nature of Claimant's job position, Employer's vaccine policy was reasonable. *Id.* The Board concluded, however, that Claimant failed to establish good cause for refusing the flu vaccine under the circumstances. The Board explained its reasoning as follows:

---

[8] *See Schaal v. Unemployment Comp. Bd. of Rev.*, 870 A.2d 952, 954-55 (Pa. Cmwlth. 2005) ("A claimant waives review of an issue by failing to raise it before the referee when [she] had an opportunity to do so.").

5

*[C]laimant provided no medical or religious exemption from [E]mployer's [vaccine] requirement.*  Instead, [C]laimant provided an [AVD], which cites the Nuremburg [T]rials, the Geneva Convention, the Universal Declaration on Bioethics and Human Rights, and the U[nited ]S[tates] Supreme Court['s] opinion *Missouri v. McNeely*, 569 U.S. 141 (2013).  [C]laimant also testified that she was covered by the Nuremberg Code and the Declaration of Helsinki.

The Universal Declaration on Bioethics and Human Rights, the Nuremberg Code, and the Declaration of Helsinki are not treaties, so they are not binding law.  The Geneva Conventions are a series of treaties, but do not provide the protections [C]laimant asserts. *McNeely*[] held that drawing blood to test for alcohol after an arrest for driving while intoxicated constituted a "search" and must be accompanied by consent or a warrant to avoid being "unreasonable" under Amendment IV of the U[nited ]S[tates] Constitution, which is not the issue before the Board.  As the [AVD] correctly notes, "if you are vaccinated against your consent they will be committing an assault, battery, malpractice and other crimes."  [C]laimant was not vaccinated against her consent, so this is immaterial.

The Board is unable to locate any state or federal law granting [C]laimant the right to refuse a vaccination required to retain her job.  Conversely, the [United States Court of Appeals for the Third Circuit] held in *Fallon v. Mercy Catholic Medical Center of Southeastern Pennsylvania*, 877 F.3d 487 ([3d Cir.] 2017), that an employee discharged for failure to be vaccinated was not protected by the religious discrimination provision of Title VII of the Civil Rights Act of 1964 because his refusal was not based on religious beliefs, but because "he simply worries about the health effects of the flu vaccine, disbelieves the scientifically accepted view that it is harmless to most people, and wishes to avoid this vaccine."

*[C]laimant's mistaken understanding of her legal rights does not justify her refusal to comply with [E]mployer's reasonable request.*

6

*Id.* at 2-3 (emphasis added). Therefore, the Board concluded that Claimant was ineligible for UC benefits under Section 402(e) of the Law. Claimant now petitions this Court for review.[9]

## Analysis

Our courts have defined "willful misconduct" as: (a) a wanton or willful disregard of the employer's interests; (b) a deliberate violation of the employer's rules; (c) a disregard for the standards of behavior that the employer rightfully can expect of its employees; or (d) negligence indicating an intentional disregard of the employer's interests or of the employee's duties or obligations. *Grieb v. Unemployment Comp. Bd. of Rev.*, 827 A.2d 422, 425 (Pa. 2003). The employer bears the burden of proving that the claimant was discharged for willful misconduct. *Walsh v. Unemployment Comp. Bd. of Rev.*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008).

Moreover, "[a]n employer seeking to prove willful misconduct by a policy violation must demonstrate the existence of the policy, its reasonableness, and its violation." *Klampfer v. Unemployment Comp. Bd. of Rev.*, 182 A.3d 495, 500 (Pa. Cmwlth. 2018). "The employer must also show that the [claimant] intentionally or deliberately violated" the policy. *Chester Cmty. Charter Sch. v. Unemployment Comp. Bd. of Rev.*, 138 A.3d 50, 54 (Pa. Cmwlth. 2016). This Court must determine whether the policy at issue was reasonable and whether the claimant had good cause for violating it. *Klampfer*, 182 A.3d at 500. The claimant bears the burden of proving good cause by demonstrating that her conduct was justifiable and reasonable under the circumstances. *Kelly v. Unemployment Comp. Bd. of Rev.*, 747 A.2d 436, 439 (Pa. Cmwlth. 2000).

---

[9] Our review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

## 1. Reasonableness of Policy

First, we must determine whether Employer's flu vaccine policy was reasonable.[10] In determining whether an employer's policy is reasonable, we "must consider whether application of the rule or policy under the circumstances is *fair and just and appropriate to accomplish a legitimate interest of the employer*." *Webb v. Unemployment Comp. Bd. of Rev.*, 670 A.2d 1212, 1215 (Pa. Cmwlth. 1996). (emphasis added).

In this case, the record establishes that the purpose of Employer's flu vaccine policy was to prevent the spread of the flu to its patients and staff. Employer explained the reason for its vaccine policy to Claimant as follows:

> At The Children's Hospital of Philadelphia, our first priority is the health and safety of our patients. Each year, influenza (flu) causes thousands of hospitalizations and deaths throughout the U[nited ]S[tates]. . . . [W]e care for some of the most vulnerable children – children most likely to develop serious complications, or even death, related to influenza. We have an opportunity – and a responsibility – to protect our patients and employees from this deadly disease.

R. Item No. 3.

As a children's hospital, Employer undoubtedly has a legitimate interest in protecting the health and safety of its patients. Employer made a business decision that requiring its employees to be vaccinated against the flu each year was necessary to protect its patients' health. We conclude that Employer's directive was reasonable. *See Rebel v. Unemployment Comp. Bd. of Rev.*, 723 A.2d 156, 159-60 (Pa. 1998) (recognizing that "[t]he creation of rules and requirements that govern the workplace is *the prerogative of the employer*" and that "[a]n employer has the

---

[10] Claimant does not dispute that Employer had a mandatory flu vaccine policy or that she was aware of the policy.

8

right to make decisions as to how [it] is going to run [its] business") (emphasis added).

Claimant does not dispute that Employer has a right to protect its patients from the flu. Rather, Claimant asserts that because Employer permitted other employees to claim religious or medical exemptions from the vaccine requirement, the vaccine policy, as applied to her, was neither fair nor just. In essence, Claimant argues that because Employer accepted religious and medical exemptions with supporting documentation, it should have also accepted her AVD as an exemption. We disagree.

In support of her request for an exemption, Claimant submitted to Employer only a one-page printout from a website purporting to explain the doctrine of informed consent to medical treatment. *See* R. Item No. 6. The AVD printout was not a religious or medical exemption and conferred no legal rights on Claimant. Aside from submitting the AVD, Claimant also informed Employer that she did not need the flu vaccine because she has a strong immune system and never gets sick. *See* R. Item No. 3 ("I have been here . . . for the last 15[] years and [for] 10 of those years I did not receive the [flu] shot and I have never been sick."); R. Item No. 2 (wherein Claimant stated that she "had already proven that [her] body has a great defense" against the flu). However, simply because Claimant was able to avoid contracting the flu prior to 2012 when she was unvaccinated does not mean that she will never contract the flu if she remained unvaccinated. As Employer previously explained to Claimant, the risk of an employee potentially infecting the hospital's most ill and vulnerable patients with the flu is far too great to take that chance. *See* R. Item No. 3; *see also* Ref.'s F.F. No. 9 (finding that "Claimant's work brought her into daily contact with the patients at Employer's hospital").

9

The evidence of record demonstrates that Employer's vaccine policy, as applied to Claimant, was neither unfair nor unjust, particularly in light of Employer's legitimate interest in protecting the health of its patients. *See Simpson v. Unemployment Comp. Bd. of Rev.*, 450 A.2d 305, 311 (Pa. Cmwlth. 1982) (holding that "if an employer's request can be deemed circumstantially reasonable, after considering the burden to the employee, then the employee has an implied obligation to cooperate"). Therefore, we conclude that Employer's flu vaccine policy was reasonable under the circumstances.

## 2. Good Cause

Because we have concluded that Employer's flu vaccine policy was reasonable, we must now determine whether Claimant established good cause for refusing to comply with the policy. In determining whether a claimant's refusal amounts to willful misconduct, this Court must consider "*all of the circumstances, including the reasons for the employee's noncompliance* with the employer's policy or directive[]." *Rebel*, 723 A.2d at 158 (emphasis added).

When balancing employer and employee rights in the context of employment directives, our Court has instructed:

> *Any legal relationship that a person voluntarily enters into can, and usually does, diminish some common law right he could otherwise exercise with impunity: be the right personal or proprietary.* Virtually every legal relationship assumed by a person creates duties and obligations to the other party that are not owed to people outside the relationship. Such a relationship is that of employee and employer. *An employee owes his employer, among other duties, a reasonable level of cooperation regarding matters that are important to the employer's interest. . . .*
>
> Of course, an employee's implied obligation to cooperate with [her] employer does not abrogate all of the non-constitutional personal and

10

proprietary rights upon which an employee could rely to justifiably withhold the action requested. Certainly, for example, an employee does not have an implied obligation to open his home to an employer search, or to stand on his head because the employer so requests. *The extent to which the implied obligation to cooperate will be deemed to prevail over an allegedly reserved common law right must, in effect, rest on a conclusion about the circumstantial reasonableness of the employer's request and its burdensomeness to the employee.* Indeed, an employer's request cannot be deemed reasonable if it will unduly burden an employee; and as to such a request there can be no implied obligation to cooperate.

But *if an employer's request can be deemed circumstantially reasonable, after considering the burden to the employee, then the employee has an implied obligation to cooperate. Although there might be practical reasons that can justify an employee's refusal to cooperate, such noncompliance cannot be predicated upon asserted common law personal and property rights.* As to employer requests that are reasonable in the above sense, *the employee has waived those rights as a basis for noncompliance; [she] waived them when [she] voluntarily assumed the legal relationship with [her] employer.*

*Simpson*, 450 A.2d at 311 (emphasis added) (internal citations omitted); *accord Rebel*, 723 A.2d at 158-59.

Here, Claimant contends that she had good cause for refusing the flu vaccine because the AVD "stipulate[s] that [she] had a [l]awful right of informed consent" and "[t]he right to refuse medical treatment has deep roots in our common law." Claimant's Br. at 8.[11] As explained above, however, the AVD Claimant submitted

---

[11] In her appellate brief, Claimant also attempts to assert a religious objection to the flu vaccine, arguing:

Title VII of the Civil Rights Act of 1964 states that the employer must accommodate an employee's sincerely held religious belief which by definition could be new or uncommon, not a part of a formal church or sect or only held by a small number of people. It's not up to my former employer to decide whether my

**(Footnote continued on next page…)**

11

to Employer was nothing more than a printout from a website explaining the doctrine of informed consent. *See* R. Item No. 6. It was Employer's prerogative to choose to not accept the AVD printout as the equivalent of a religious or medical exemption.

With regard to Claimant's informed consent argument, it is true that Claimant has a legal right, *as a patient*, to refuse a vaccine or other medical treatment. However, Claimant was *not* Employer's patient; she was its employee. By voluntarily entering into an employment relationship with Employer, Claimant was obligated to comply with Employer's reasonable directives related to its business interests. *See Simpson*, 450 A.2d at 311 (recognizing that an employee waives certain legal rights as a basis for noncompliance with a reasonable employer directive when she "voluntarily assumed the legal relationship with [her] employer").

While Claimant had a right to choose to not be vaccinated for a non-religious, non-medical reason, she was notified and aware that, under Employer's policy, that

---

religion is real their only concern should be could I prove that I practice the ten[ets] within my religion, which is tied to my personal health.

Claimant's Br. at 11-12. Claimant also cites her "holistic" lifestyle as a basis for refusing the flu vaccine, claiming that she "rel[ies] on what 'The Most High' put on this earth in its purest form (plants and herbs)" and that "allowing an artificial virus (manipulated under man's hands) to alter my genes and reap [sic] havoc goes against my very beliefs." *Id.* at 6. In the proceedings before the Referee, however, Claimant did not assert a religious reason for refusing the flu vaccine; she relied only on the AVD and her right of informed consent. *See, e.g.*, R. Item No. 4 ("[A]s an adult I can make an informed decision as to what I have put into my body."); N.T., 4/11/18, at 3 ("[M]y [AVD] states that I had the right to object against vaccinations per the Nuremberg Code . . . ."). The first time she asserted a religious objection was in her appeal to the Board. *See* R. Item Nos. 11 and 12. Consequently, Claimant's assertions regarding her purported religious objection are waived. *See Schaal*, 870 A.2d at 954-55. Furthermore, Claimant admitted during her oral interview with the Department of Labor and Industry that she did *not* have a medical reason to refuse the flu vaccine. *See* R. Item No. 4; *see also Hubbard*, 252 A.3d at 1188 (stating that a claimant's out-of-court admissions on her UC submissions, including the "claimant questionnaire" and the "internet claim form," are competent evidence to support the Board's findings).

12

choice would have a consequence: termination of her employment. *See* R. Item No. 3 ("A condition of [your] continued employment is to get the flu shot."). Claimant cites no authority for the proposition that an employee can refuse a vaccine as an express condition of employment – a condition with which Claimant *complied*, albeit reluctantly, for *five years* before opting to refuse that condition. *See* Bd.'s F.F. No. 3; R. Item No. 2. As the Board properly determined, "[C]laimant's mistaken understanding of her legal rights does not justify her refusal to comply with [E]mployer's reasonable request." Bd.'s Order, 8/16/18, at 3; *see Rebel*, 723 A.2d at 159-60 (holding that the claimant's refusal to submit to drug testing pursuant to his employer's policy, on the ground that the drug policy violated his right to privacy, was willful misconduct under Section 402(e) of the Law).[12]

In sum, Claimant failed to provide Employer with a valid reason for refusing the flu vaccine when Employer mandated it, knowing that her failure to do so would result in her discharge. Employer's vaccine policy was entirely reasonable, given the nature of Claimant's job at a children's hospital, and she deliberately chose not to comply without good reason. As discussed earlier, it was Employer's right to mandate certain vaccines for its employees to protect the health of its patients and staff. Because Claimant failed to establish a valid justification for refusing to

_____

[12] As our Court explained in *Simpson*:

> However sincere the claimant may have been in his perception of his legal rights, we must conclude that his mistake in that respect was not the kind that can be allowed to exonerate him and preserve his eligibility for [UC] benefits. *His conduct was purely volitional, and disregardful of his employer's interest. There is nothing in this case to indicate that the claimant's beliefs about his legal rights were other than self-induced.* If he wished to gamble on the accuracy of his personal jurisprudence, the [UC] Fund should not be required to subsidize his misconception.

450 A.2d at 312 (emphasis added).

13

comply with Employer's reasonable directive, she is ineligible for UC benefits under Section 402(e) of the Law.[13]

## Conclusion

We conclude that Employer satisfied its burden of proving that: (1) it has a reasonable policy mandating the flu vaccine for its employees; (2) Claimant was aware of the policy; and (3) Claimant deliberately refused to comply with the policy. We also conclude, based on the evidence of record, that Claimant failed to establish good cause for refusing to comply with Employer's vaccine mandate under the circumstances. Accordingly, we affirm the Board's Order.

_____
ELLEN CEISLER, Judge

---

[13] We note that, in her appellate brief, Claimant discusses numerous "facts" that were not part of the record before the Referee or the Board. *See* Claimant's Br. at 7-10. It is well settled that this Court may not consider extra-record evidence that is not part of the certified record on appeal. *See Umedman v. Unemployment Comp. Bd. of Rev.*, 52 A.3d 558, 564 (Pa. Cmwlth. 2012). Consequently, we will not consider the extra-record evidence referenced in Claimant's brief.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Niaja Brown,                              :
               Petitioner      :
                                           :
        v.                              :   No. 1306 C.D. 2018
                                           :
Unemployment Compensation                 :
Board of Review,                          :
               Respondent      :

# **O R D E R**

AND NOW, this 5th day of May, 2022, we hereby AFFIRM the August 16, 2018 Order of the Unemployment Compensation Board of Review and DISMISS AS MOOT Niaja Brown's Application for Relief filed on October 31, 2019.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Niaja Brown,                              :
                    Petitioner           :
                                         :    No. 1306 C.D. 2018
          v.                             :
                                         :    Submitted: February 22, 2019
Unemployment Compensation Board          :
of Review,                               :
                    Respondent           :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ELLEN CEISLER, Judge


DISSENTING OPINION
BY JUDGE McCULLOUGH                              FILED: May 5, 2022


          I respectfully but strenuously dissent from the Majority opinion. While employers can terminate an employee for failure to comply with an employer mandate, *i.e.*, a reasonable policy, I believe the Pennsylvania Unemployment Compensation Board of Review's (UCBR) denial of unemployment compensation benefits under these circumstances is indefensible.

          In assessing whether an individual may be denied unemployment benefits due to the alleged failure to comply with an employer mandate, we must determine whether the action constituted willful misconduct, and whether the policy is reasonable. First, regarding willful misconduct, in this Commonwealth the people have a right to choose their own medical treatment, which includes deciding whether to get a flu shot. They are not forced to do so. Moreover, there is no federal or state law mandating it. Rather, every competent individual has a right under the common law doctrine of self-determination to choose their medical treatment(s). Yet, the

majority upholds the UCBR's decision to deny a citizen unemployment compensation benefits for exercising this legally protected right and, moreover, engages in no assessment of whether this particular employer's policy was reasonable.

As discussed below, the decision about whether to get a flu shot every year is a personal health choice that is protected in this Commonwealth under the common law doctrine of self-determination. **This is a legally protected right**, which Niaja Brown (Claimant) here chose to invoke when she refused the shot – and she was fired for doing so.[1] Our Courts in *Ault v. Unemployment Compensation Board of Review*, 157 A.2d 375 (Pa. 1960), and *Duquesne Light Company v. Unemployment Compensation Board of Review*, 474 A.2d 407 (Pa. Cmwlth. 1984), have refused to deny unemployment compensation benefits to claimants terminated for exercising their **legally protected rights**, holding that such may be considered to be reasonable conduct and not willful misconduct. I submit that this case falls directly within the purview of these cases, as Claimant exercised the right to make a decision about her medical care based on her own personal secular beliefs. In what I perceive to be an issue of first impression, we must hold here that the exercise of the common law right of self-determination in refusing an invasive bodily intrusion did not, and cannot, amount to willful misconduct under our unemployment compensation law.

---

[1] The Children's Hospital of Philadelphia (Employer) fired Claimant from employment as a Senior Nursing Assistant because she failed to comply with Employer's mandate to get a flu shot by December 5, 2017. Whether Employer wrongfully terminated Claimant for failing to comply with its flu shot policy is an entirely separate question that is not before us. The question of justifiable termination and eligibility for unemployment benefits are two different things; an employee may be fired for completely proper reasons yet remain eligible for benefits. *See Burger v. Unemployment Compensation Board of Review*, 801 A.2d 487 (Pa. 2002).

Second and equally compelling in my view is Employer's utter failure to demonstrate that the application of all aspects of its flu shot policy under the circumstances were "fair and just and appropriate to accomplish a legitimate interest."[2]  As such, I believe the Majority falls short of resolving fully the issue before us.  Under Employer's policy, certain employees qualified for a religious or medical exemption, for which Employer ostensibly adopted far less-intrusive flu-prevention alternatives, which allowed those employees to avoid the shot and continue working.  Inexplicably, the risk reduction component of Employer's flu shot policy does not afford employees, such as Claimant, who declined a flu shot for secular (non-religious) or philosophical reasons the same opportunity to don a mask or take other precautions and remain employed.

In my assessment, the issue before us reaches beyond whether an employee committed willful misconduct by committing some overt infraction of a work policy.  Rather, Claimant was fired because she would not permit Employer to determine her medical treatment, *i.e.*, what she must allow to be injected into her body, while still allowing other employees who refused the shot for other reasons, to remain employed.  Thus, I submit, the discussion requires a more in-depth analysis than the superficial conclusion that an employee who violates a work policy that was meant to protect her employer's patients has engaged in willful misconduct.

### 1. Legally Protected Common Law Right of Self-Determination

More than a century ago, the United States Supreme Court recognized that "[n]o right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and

_____

[2] *Spirnak v. Unemployment Compensation Board of Review*, 557 A.2d 451, 453 (Pa. Cmwlth. 1989).

unquestionable authority of law." *Union Pacific Railway Co. v. Botsford*, 141 U.S. 250, 251 (1891). In *Cruzen by Cruzen v. Director, Missouri Department of Health*, 497 U.S. 261 (1990), then-Chief Justice Rehnquist stated that "[e]very human being of adult years and sound mind has a right to determine what shall be done with his own body." *Id*. at 269.[3]

Pennsylvania recognizes a common law right to exercise autonomy over the medical treatment to be utilized by an individual, also referred to as the doctrine of self-determination. Although some courts have noted constitutional bases for such a right,[4] our Pennsylvania Supreme Court has chosen to follow the example set by the courts[5] that have relied solely on the common law basis for the right to self-determination. *See In re Fiori*, 673 A.2d 905, 909-10 (Pa. 1996) ("[f]rom [the] right to be free from bodily invasion developed the doctrine of informed consent"); *Shinal v. Toms*, 162 A.3d 429, 452 (Pa. 2017) (recognizing right to medical self-determination); *Coleman v. Workers' Compensation Appeal Board (Indiana Hospital and Phico Services Company)*, 842 A.2d 349, 355 (Pa. 2004)

---

[3] Specifically, in *Cruzen by Cruzen*, the U.S. Supreme Court held that the right of a competent person to refuse unwanted medical treatment or care is a protected liberty interest under the Fourteenth Amendment. U.S. Const. amend. XIV. There, a patient in a state hospital slipped into a persistent vegetative state after a car accident. 497 U.S. at 266. After it became clear that the patient would never recover cognitive function, her parents sought an "order directing the withdrawal of their daughter's artificial feeding and hydration equipment." *Id*. The Supreme Court of Missouri searched for evidence of the patient's intent; in the absence of clear and convincing evidence of her consent to withdraw life-sustaining treatment, the Court held her parents lacked the authority to make such a request on her behalf. *Id*. at 269. The U.S. Supreme Court affirmed. In reaching its decision, the U.S. Supreme Court found that the patient possessed a cognizable "liberty interest" under the Due Process Clause in the right to individual bodily autonomy.

[4] *See Ragona, Incompetent v. Attorney General*, 6 Pa. D. & C. 4th 202 (1990), 1990 WL 259033.

[5] For that proposition, the Pennsylvania Supreme Court in *Fiore* cited to *In re Estate of Longeway*, 549 N.E.2d 292, 297 (Ill. 1989); *Mack v. Mack*, 618 A.2d 744 (Md. 1992).

(recognizing importance of safeguarding a workers' compensation claimant's right of self-determination). *See also In re Duran*, 769 A.2d 497, 506 (Pa. Super. 2001) (recognizing the right to self-determination); and *Mrs. Smith Pie Co. v. Workmen's Compensation Appeal Board (Wise)*, 426 A.2d 209, 211-12 (Pa. Cmwlth. 1981) (interest against unwarranted intrusions implicitly recognized where this Court affirmed the referee's conclusion that a 10-14 day hospitalization for testing, including the intravenous administration of a narco-hypnotic, was unreasonable under section 314 of the Workers' Compensation Act[6]); *Forbes v. County of San Diego*, 20-cv-00998-BAS-JLB, 2021 WL 843175, at *7 (S.D. Cal. Mar. 4, 2021) (viewing compulsory vaccination as an intrusion into personal autonomy).[7]

Here, Claimant determined not to allow others to inject a foreign substance into her body, by mandate of Employer in order to keep her job. She expressly asserted her legally protected right to self-determination at the time of refusal and was then fired for doing so. There can be no "fault" in exercising a legally protected right. Ergo, Claimant's conduct cannot be construed as willful misconduct.

Indeed, our courts have held that exercising one's legally protected rights may be considered to be reasonable conduct, which does not amount to willful misconduct. In *Duquesne Light Company*, we held that a claimant's reliance on his federal right to privacy was good cause for his refusal to complete a medical disclosure form required by his employer. There, the employer, Duquesne Light Company (Duquesne), required the claimant, a nuclear control operator, to obtain

---

[6] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §651.

[7] In addition, a person's right to self-determination has been codified in the Health Care Agents and Representatives Act, 20 Pa.C.S. § 5423(a), which the General Assembly intended to provide "a statutory means for competent adults to control their health care through instructions written in advance or by health care agents or health care representatives and requested orders."

certification from the Nuclear Regulatory Commission.  To obtain a nuclear control operator license, the claimant was required to disclose his medical history by completing a Certificate of Medical History.  The claimant, who had become dissatisfied with his position as nuclear control operator, attempted to transfer, or bid into a different job within Duquesne.  However, Duquesne would not permit him to transfer from his position.  Relying on the Federal Privacy Act,[8] 5 U.S.C. §552a, the claimant refused to complete this form in order to disqualify himself as a nuclear control operator and, in turn, secure his transfer to a different job.  Duquesne terminated his employment because he refused to disclose his medical history.  474 A.2d at 408-09.

The claimant applied for, and was awarded, unemployment compensation benefits.  Duquesne sought review, arguing that the claimant's refusal to disclose certain medical information constituted a wanton and willful disregard of his employer's interests and that the claimant was ineligible for benefits because the claimant became unemployed through his own fault.  This Court disagreed.

Examining the claimant's reasons for withholding medical information and balancing those against the reasonableness of the request made by Duquesne, we concluded that

> **[t]he claimant here had a legally protected right under the Privacy Act**.  This notice, attached to the license application, made the disclosure of medical information voluntary.  **Since [the] claimant had a legally protected right, one that he could exercise at his own option, his conduct can be characterized as reasonable. His unemployment, therefore, was not the result of his**

---

[8] The federal Privacy Act, Pub.L. 93-579, 88 Stat. 1896, enacted December 31, 1974, 5 U.S.C. §552a, a United States federal law, establishes a Code of Fair Information Practice that governs the collection, maintenance, use, and dissemination of personally identifiable information about individuals that is maintained in systems of records by federal agencies.

**willful misconduct because [the] claimant acted in a reasonable manner**.

*Id*. at 410 (emphasis added).

Applying *Duquesne Light* to the facts of this case, Claimant had a legally protected right, *i.e.*, a common law right of self-determination, to refuse the flu shot. Since Claimant had a legally protected right, her conduct can be characterized as reasonable and not the result of willful misconduct.

Similarly, in *Ault*, an employee was discharged after exercising his privilege under the Fifth Amendment[9] before a United States Senate subcommittee. In concluding that the employee should not have been denied his unemployment compensation benefits for exercising that legal right, the Supreme Court said: "We are unwilling to engraft upon our law the notion, nowhere so decided, that unemployment benefits may be denied because of raising the bar of the Amendment against rumor or report of disloyalty or because of refusing to answer such rumor or report." *Ault*, 157 A.2d at 380.

Like the Pennsylvania Supreme Court in *Ault*, we must be unwilling to engraft upon our law the notion that unemployment benefits may be denied to Claimant because she chose to exercise her long-standing legally protected right of self-determination. Therefore, unlike the Majority, I would conclude that Claimant may not be denied unemployment benefits for invoking her legally protected right to self-determination when she refused the flu shot.[10]

---

[9] U.S. Const. amend. V.

[10] The UCBR and Majority focus on Claimant's mistaken understanding of the legal import of her "Advance Vaccination Directive (AVD) Card" and the authorities cited therein. As the Majority recounts, Claimant believed that the Nuremberg Code and Declaration of Helsinki gave her the "legal" right to refuse the flu vaccination. (Certified Record (C.R.), Item No. 9; Notes of Testimony (N.T.) at 4.) Claimant explained that she presented Employer with an AVD Card which she obtained online. *Id*.; N.T. at 3. Claimant told Employer that her AVD Card entitled her to
**(Footnote continued on next page…)**

## 2. Reasonableness of Employer's Policy/Rule

Further, if an employer alleges willful misconduct because the claimant violated a work rule, the employer must prove both the existence of the rule and its violation. *Caterpillar, Inc. v. Unemployment Compensation Board of Review*, 703 A.2d 452, 456 (Pa. 1997); *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008). In considering the employer's proffer, we examine whether "the rule or policy is reasonable in light of all the circumstances and if so, whether the employee [had] good cause to violate the rule or policy." *Caterpillar, Inc.*, 703 A.2d at 456. Reasonableness of the rule or policy is determined by "consider[ing] whether application of the rule or policy under the circumstances is fair and just and appropriate to accomplish a legitimate interest of the employer." *Spirnak*, 557 A.2d at 453.

Only if the employer satisfies its burden, will the burden then shift to the claimant to show that she had good cause for her actions. *McKeesport Hospital v. Unemployment Compensation Board of Review*, 625 A.2d 112, 114 (Pa. Cmwlth. 1993). "Whether a claimant has good cause to violate an employer's rule or policy is a question of law subject to this [C]ourt's review and should be viewed in light of

---

lawfully refuse the vaccine and that Employer should allow her to assert this legal exemption. *Id.* Claimant argued that "if an exemption [is] allowed for medical and religious reasons, then my advanced directive should be allowed as well." *Id.*; N.T. at 4. She explained that she previously got the flu shot before because she felt "forced to get it" but "upon coming into this knowledge . . . that I have a right to object to it, that's when I decided to say no, enough is enough." *Id.*; N.T. at 5. Before this Court, Claimant continues to argue that Employer failed to demonstrate that she committed willful misconduct because "every human being has the right to make decision[s] concerning their health." (Claimant's Brief at 5.)

To me, the fact that Claimant was mistaken as to the legal import of the AVD Card is of no moment because Claimant's legally protected right of self-determination existed even without the AVD Card, and regardless of her mistaken belief that the AVD Card granted her that legally protected right.

all of the attendant circumstances." *Docherty v. Unemployment Compensation Board of Review*, 898 A.2d 1205, 1208 (Pa. Cmwlth. 2006). In *Frumento v. Unemployment Compensation Board of Review*, 351 A.2d 631 (Pa. 1976), our Supreme Court found that if an employee's action is justifiable or reasonable under the circumstances then it will not constitute willful misconduct because the employee would not be in willful disregard of the employer's interests and rules or standard of conduct that the employer has the right to expect. *See also Docherty*, 898 A.2d at 1208-09 ("A claimant has good cause if his . . . actions are justifiable and reasonable under the circumstances.").

Under the relevant standard, Claimant is not ineligible for benefits unless (1) Employer demonstrates that its flu shot policy was reasonable in light of all the circumstances; and (2) her violation of Employer's flu shot policy was not justifiable or unreasonable. *Spirnak*, 557 A.2d at 453; *Docherty*, 898 A.2d at 1208-09.

Employer's flu shot policy was adopted to prevent the spread of the flu virus to employees and patients. (C.R. Item No. 3.) However, Employer's policy also permitted certain employees to apply for an exemption for religious and medical reasons and allowed those employees, who declined to get the flu shot, to remain employed without a vaccine. Seemingly, these individuals were allowed to wear masks or take other precautionary measures to avoid spreading the flu virus. Employer did not appear at the hearing and explain why Claimant, who refused the flu shot for secular, non-religious reasons, was not afforded the same opportunity to take these less invasive risk-reducing measures and remain employed.

Under Pennsylvania law, an employer must demonstrate that the application of the rule was reasonable; otherwise a violation of the rule will not

constitute willful misconduct. *Spirnak*. This is where I believe the Majority's analysis falls short because it does not address whether Employer's application of its flu shot policy under these circumstances was fair, just, and appropriate to achieve a legitimate purpose. *Spirnak*. It is a critical aspect of the policy which was challenged by Claimant, which I believe we are obliged to address head-on.

As one court has observed, there is no principled reason to treat one's refusal to take the flu shot for secular reasons differently than those who refuse it for religious or medical reasons for purposes of determining whether an employee engaged in willful misconduct. In *Valent v. Board of Review of the Department of Labor*, 91 A.3d 644 (N.J. App. Div. 2014), June Valent was employed as a registered nurse at Hackettstown Community Hospital (hospital). The hospital operated under a mandatory vaccination policy, providing exemptions only for documented religious and medical purposes. As in this case, Valent refused to take the flu shot for purely secular reasons but she offered to wear a facemask, the same alternative to the flu shot required of employees who invoked a medical or religious exemption. The hospital terminated Valent's employment based on her refusal to submit to the flu vaccination policy. Consequently, the New Jersey Board of Review (board) denied Valent unemployment compensation benefits on the grounds that she was engaged in misconduct as defined by New Jersey's unemployment compensation statute. *Id*. at 646.

On appeal, the *Valent* Court reversed, finding it compelling that the hospital permitted employees to work without the vaccine provided they wear a mask. The *Valent* Court reasoned that the flu vaccination policy was not reasonably based exclusively on public health concerns because an employee claiming an exemption was only required to sign a form attesting to his or her faith-based (or

medical) reason for refusing to be vaccinated, "accompanied with an appropriate note" from a religious leader, after which he or she could wear a mask. *Id*. at 647. The *Valent* Court found that these requirements were "facially unrelated to public health issues, patient safety concerns, or scientifically valid reasons for the containment of the flu virus." *Id*. at 647-48. The court held that by exempting employees who could produce religious-based documentation, and allowing them to wear a mask, but not Valent, the employer's requirements for exemptions under the flu vaccination policy were facially unrelated to public health issues. They were also facially unrelated to patient safety concerns and scientifically valid reasons for the containment of the flu virus. By following the religious or medical exemption policy of wearing a facemask when in the presence of patients, Valent adhered to what the court regarded as the relevant part of the hospital's policy by preserving the patient's health and safety.[11]

Here, the Majority concludes that Employer's flu shot policy was reasonable because of the potential health danger to Employer's vulnerable patient population. However, this analysis only touches upon part of Employer's flu shot policy. The other part, not acknowledged or addressed by the Majority, involves the reasonableness of Employer's exemption policy which singled out the religious and medical exemptions for different treatment - by allowing some employees to wear face masks or take some other precautionary alternative deemed sufficient to protect its goal of patient safety. These alternatives are presumptively suitable religious and

---

[11] Valent also argued the board's endorsement of the hospital's flu vaccination policy that contained a religious-based exemption violated her constitutionally protected right to freedom of expression under the First Amendment of the U.S. Constitution. 91 A.3d at 648. The *Valent* Court agreed, holding that by denying Valent's application to receive unemployment benefits based only on her unwillingness to submit to the hospital's religion-based policy, the board violated Valent's rights under the First Amendment. *Id*.

medical belief accommodations. However, Employer provided no explanation on the record as to why it cannot also meet its legitimate public health goals through less intrusive means by allowing Claimant to, for example, wear a facemask, as well.

Based on what I perceive to be an arbitrary disparity between Employer's position regarding safe alternatives for religious and medical exemptions, versus the denial of such alternatives for those who exercise their legally protected right of self-determination of a medical treatment, I believe Employer's policy was not justified and, hence, is unreasonable. Employer has failed to come forward with any evidence or argument that denying Claimant those same options furthers its legitimate goal of promoting the public health. Consequently, despite the seemingly reasonableness of seeking to avoid the spread of the flu virus in a children's hospital, I submit that Employer failed to demonstrate that its application of its flu shot policy under these circumstances was fair, just, and appropriate because it allowed certain employees to take measures to avoid the spread of the virus and remain employed, but it did not provide Claimant the same opportunity, without any explanation of why that was reasonable. *See Spirnak*; *Caterpillar, Inc.*

In this same vein, I would also find that Employer failed to establish that Claimant's conduct was so inimical to its interests that willful misconduct occurred.[12] *Umedman v. Unemployment Compensation Board of Review*, 52 A.3d 558, 562 (Pa. Cmwlth. 2012) (citation omitted) (explaining that willful misconduct may also be found "where the behavioral standard is obvious, and the employee's conduct is so inimical to the employer's best interests that discharge is a natural result").

---

[12] *See* C.R. Item No. 3 at page 3 where Employer states that it discharged Claimant because her "actions were not in [Employer's] interests."

PAM - 12

Here, Employer sent Claimant a letter which stated that "[o]ur first priority is the health and safety of our patients . . . [w]e have an opportunity—and a responsibility—to protect our patients and our employees from this deadly disease." (C.R. Item No. 3.) At first glance it may appear that refusing the flu shot was an intentional disregard of Employer's interest or Claimant's duties and obligations.[13] However, I do not view the conundrum as so cut-and-dry. Even without Employer's evidence, it is safe to say, for those employees, alternative protective measures are undoubtedly put in place to contain the spread of the flu virus, such as facemasks. Yet these same measures were denied to Claimant as an option. Thus, without more, we should be loath to accept that Claimant arbitrarily or flagrantly disregarded Employer's interests. To do so would require us to conclude that Claimant, who refused the shot for secular personal reasons, acted contrary to Employer's interests, while those employees who received exemptions for religious or medical reasons did not. Here, the reason for not taking the flu shot does not change in any way the fact Employer could have allowed Claimant, like the others who invoked an exemption, to wear a facemask and still uphold its public health policy. In my view, the measure of disregard of Employer's interests is the same regardless of the reason for refusing the flu shot: religious, medical, or legal. It would be absurd to conclude that Claimant is ineligible for benefits by way of misconduct for failing to obtain a flu shot, where Employer evidently would employ safety measures for those who are unvaccinated pursuant to its Flu Shot Policy and allow those individuals to remain employed. Most importantly, Employer failed to appear at the hearing and

---

[13] *See Grieb v. Unemployment Compensation Board of Review*, 827 A.2d 422, 425 (Pa. 2003) (defining willful misconduct as (1) a wanton and willful disregard of an employer's interests; (2) a deliberate violation of an employer's rules; (3) a disregard of the standards of behavior that an employer can rightfully expect from an employee; or (4) negligence showing an intentional disregard of the employer's interest or the employee's duties and obligations).

present evidence as to why, if those safety measures are effective for employees who raise a religious or medical exemption, those same safety measures will not be equally effective for employees such as Claimant who object to the flu shot for secular, legal reasons. Perhaps there is a good reason. If there is, it is not in the record. I do not believe we can hold this failure against Claimant.

For the reasons above, I believe Claimant is entitled to unemployment compensation benefits. Our unemployment compensation system is solely concerned with an individual's entitlement to benefits for becoming unemployed through no fault of her own. Here, Claimant became unemployed because she exercised her common law right to self-determination. Exercising a legally protected right cannot amount to "willful misconduct" warranting denial of unemployment benefits. *Ault*; *Duquesne Light*. Yet, by denying her benefits, the UCBR (i.e., acting on behalf of our Pennsylvania government) has in essence penalized or punished Claimant under our Commonwealth's unemployment compensation law for exercising a legally protected right – for not getting a flu shot. In so doing, our government is indirectly requiring what the law does not - by denying unemployment compensation benefits to those who refuse it. Moreover, Employer has failed to meet its burden of demonstrating that its policy was reasonable under these circumstances. Suffice it to say, had Claimant been afforded the same risk-reducing accommodations as employees asserting a religious or medical exemption, she would still be employed.

Finally, I would find the UCBR's reliance on *Fallon v. Mercy Catholic Medical Center of Southeastern Pennsylvania*, 877 F.3d 487 (3d Cir. 2017), to be mistaken because it involved a claim for wrongful termination based on religious discrimination. In *Fallon*, a hospital worker claimed that his employer terminated

PAM - 14

him for failing to get a flu shot due to his religious beliefs. The United States Court of Appeals for the Third Circuit, however, held that the worker's anti-flu vaccination beliefs were not religious and that, as a result, Title VII[14] did not protect the employee. Although the employee in *Fallon* did not belong to any religious organization, he held strong personal and medical beliefs opposing the flu vaccine. His complaint alleged that he believed that he "should not harm" his own body and that the flu vaccine "may do more harm than good." *Fallon*, 877 F.3d at 492.

The court found that the worker's beliefs were not religious because they: (1) did not "address fundamental and ultimate questions having to do with deep and imponderable matters," (2) were not part of a comprehensive belief system, and (3) were not manifested in formal and external signs. *Id*. Rather, the worker's concern was really about health effects of the flu vaccine because he did not believe the scientifically accepted view that it is harmless to most people. *Id*. The court held that the worker's belief, although sincerely held, was medical rather than religious, and did not occupy a place in his life similar to that of a more traditional religion. *Id*. Accordingly, the court affirmed the dismissal of the employee's Title VII claim.

*Fallon* is materially distinguishable from the instant matter. *Fallon* is squarely concerned with an individual's right to protection from discrimination under a federal statute, solely concerned with discriminatory behavior resulting in a wrongful termination. Under *Burger*, the impetus of an individual's discharge viewed through the lens of wrongful termination is a question separate from an individual's entitlement to unemployment compensation benefits. For this reason, I find *Fallon* unpersuasive herein because the issue here is whether Claimant is

---

[14] 42 U.S.C. §§2000(e)-2000(e)-17.

entitled to unemployment compensation, as a matter of state law, for availing herself of an existing legal right.

Accordingly, I dissent. I would reverse the UCBR's denial of unemployment compensation benefits.

_____
PATRICIA A. McCULLOUGH, Judge